STATE OF NORTH CAROLINA v. KENNETH LEE BOYD

No. 547A88-2

(Filed 31 July 1996)

**1. Evidence and Witnesses § 2302 (NCI4th)— absence of cool state of mind—expert testimony properly excluded**

The trial court did not err by preventing an expert in forensic psychology from using the phrase "cool state of mind" to convey to the jury that defendant lacked the specific intent necessary to commit premeditated and deliberate murder at the time he shot the two victims where the trial court on *voir dire* explained to the psychologist the legal import of acting in a cool state of mind; the witness conceded that the legal and medical definitions of the phrase differed but stated that he meant to convey to the jury that defendant was not acting with a cool state of mind in the medical sense; and the trial court emphasized that the psychologist could use other terminology to convey his opinion to the jury and ruled that other questions regarding defendant's state of mind that defendant sought to pose to the expert witness would be allowed.

**Am Jur 2d, Evidence §§ 338, 351; Expert and Opinion Evidence §§ 190, 256; Trial § 341.**

**Admissibility of expert testimony as to whether accused had specific intent necessary for conviction. 16 ALR4th 666.**

Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.

2. **Evidence and Witnesses § 2051 (NCI4th)— belief by witness—instantaneous conclusion of the mind**

Testimony by defendant's brother-in-law in a prosecution for two first-degree murders that he believed that "[defendant was] going to kill everybody" was admissible as an instantaneous conclusion as to defendant's condition and state of mind based upon the witness's opportunity to observe defendant shoot his father, yell at his own children, reload his weapon, and threaten to shoot the witness.

Am Jur 2d, Evidence §§ 556, 557.

Comment Note.—Ability to see, hear, smell, or otherwise sense, as proper subject of opinion by lay witness. 10 ALR3d 258.

Construction and application of Rule 701 of Federal Rules of Evidence, providing for opinion testimony by lay witnesses under certain circumstances. 44 ALR Fed. 919.

3. **Homicide § 706 (NCI4th)— first-degree murder—failure to instruct on voluntary manslaughter—error cured by verdict**

Where the trial court instructed the jury on first-degree and second-degree murder for each of two killings and the jury returned a verdict of guilty of first-degree murder based on malice, premeditation and deliberation for each, any error in the court's failure to instruct on voluntary manslaughter is harmless.

Am Jur 2d, Trial §§ 1142, 1427-1435, 1483.

Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.

4. **Homicide § 663 (NCI4th)— voluntary intoxication—instruction not required**

The trial court was not required to instruct on voluntary intoxication in a prosecution for two first-degree murders where the combined testimony of defendant and other witnesses established that defendant was intoxicated at the time of the murders,

STATE v. BOYD

[343 N.C. 699 (1996)]

but defendant failed to produce substantial evidence that he was so intoxicated that he could not form a deliberate and premeditated intent to kill.

**Am Jur 2d, Evidence § 746; Trial §§ 769, 1279, 1280.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**When intoxication deemed involuntary so as to constitute a defense to criminal charge. 73 ALR3d 195.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

5. **Criminal Law § 774 (NCI4th); Homicide § 694 (NCI4th)— defense of unconsciousness or automatism—instruction not required**

The trial court did not err by refusing to instruct on the defense of unconsciousness or automatism in a prosecution for two first-degree murders where defendant relied only upon his own self-serving testimony at trial that he could not remember many of his actions on the day of the crimes, attributing his memory loss to flashbacks from his experiences in Vietnam; defendant's testimony was contradicted by an inculpatory statement he gave to police within hours of committing the murders in which he was able to recall many of the graphic details of the murders; and neither of defendant's expert witnesses gave testimony in support of defendant's unconsciousness claim.

**Am Jur 2d, Homicide §§ 116, 406.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**Automatism or unconsciousness as defense to criminal charge. 27 ALR4th 1067.**

6. **Criminal Law § 682 (NCI4th)— mitigating circumstance— mental or emotional disturbance—peremptory instruction not required**

Even though the expert testimony of a psychiatrist and a psychologist was some evidence from which the jury could conclude

that defendant was under the influence of a mental or emotional disturbance when he murdered his father-in-law and wife, the trial court was not required to peremptorily instruct the jury on this mitigating circumstance where this expert testimony was contradicted by the testimony of a defense witness that defendant was his usual self and did not appear disoriented or unaware of what was going on around him on the afternoon of the murders, and by the testimony of a detective that defendant was able to provide a detailed statement in which he confessed to the murders and to answer numerous questions within the hour after his arrest. N.C.G.S. § 15A-2000(f)(2).

**Am Jur 2d, Homicide §§ 114, 256, 406, 516, 576; Trial §§ 768, 835, 841, 1270-1278.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

7. **Criminal Law § 681 (NCI4th)— mitigating circumstance— impaired capacity—peremptory instruction not required**

The evidence of defendant's capacity to conform his conduct to the requirements of the law when he committed two murders was in controversy so that the trial court did not err by failing to give a peremptory instruction on this mitigating circumstance where two experts testified that defendant's capacity to conform his conduct to the requirements of the law was impaired, but this testimony was contradicted by evidence that, immediately after he committed the murders, defendant called 911, identified himself, and alerted the dispatcher to the murders, and that defendant thereafter surrendered and cooperated with law enforcement. N.C.G.S. § 15A-2000(f)(6).

**Am Jur 2d, Homicide §§ 114, 256, 406, 516, 576; Trial §§ 768, 835, 841, 1270-1278.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

8. **Criminal Law § 680 (NCI4th)— nonstatutory mitigating circumstances—peremptory instructions not required**

The trial court did not err by failing to give a peremptory instruction on the nonstatutory mitigating circumstance that

defendant suffered from learning disabilities which hindered his chances for success in school, although testimony by a psychologist supported this circumstance, where defendant's school record which was introduced into evidence did not identify any disability, and the psychologist's assessment over thirty years after defendant dropped out of school was not so manifestly credible as to mandate a peremptory instruction. Nor did the trial court err by failing to give a peremptory instruction on the nonstatutory mitigating circumstance that defendant was not acting in an entirely calm, rational manner at the time of each killing, assuming that this circumstance could properly be deemed mitigating, where there was evidence that defendant called 911 and surrendered to law enforcement immediately after he committed the crimes.

**Am Jur 2d, Homicide §§ 114, 256, 406, 516, 576; Trial §§ 768, 835, 841, 1270-1278.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

9. **Constitutional Law § 342 (NCI4th)— capital trial— absence of defendant from portion—harmless error standard**

Article I, Section 23 of the Constitution of North Carolina guarantees a criminal defendant the right to be present at every stage of his trial. The absence of a defendant from some portion of his capital trial is not automatically reversible error, however, as the Supreme Court applies a harmless error standard in such cases under which the State has the burden of establishing that the error was harmless beyond a reasonable doubt.

**Am Jur 2d, Constitutional Law § 842; Trial § 1692.**

**Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.**

10. **Constitutional Law § 342 (NCI4th)— capital trial—mitigating circumstances—conference in chambers—absence of defendant—harmless error**

The trial court's error in conducting a conference in chambers to discuss defendant's proposed mitigating circumstances in a capital sentencing proceeding without the presence of defend-

ant was harmless beyond a reasonable doubt where defendant was represented by counsel at the conference; the entire conference was transcribed and made part of the record; defendant's counsel were given the opportunity to preserve on the record every objection to the trial court's rulings and the reasons for their objections; and the substance of each mitigating circumstance requested by defendant and discussed by defendant's counsel during the conference was later submitted to the jury.

**Am Jur 2d, Constitutional Law § 842; Judges § 28; Trial § 1692, 1777.**

**Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.**

11. **Criminal Law § 1347 (NCI4th)— aggravating circumstance—course of conduct—not unconstitutionally vague**

The course of conduct aggravating circumstance set forth in N.C.G.S. § 15A-2000(e)(11) does not violate due process by reason of constitutional vagueness.

**Am Jur 2d, Constitutional Law § 818; Trial §§ 841, 1760.**

12. **Criminal Law § 1347 (NCI4th)— two murders—aggravating circumstance—course of conduct—each killing as aggravator for the other**

The submission of one killing as an aggravating circumstance for another murder under the "course of conduct" provision of N.C.G.S. § 15A-2000(e)(11) does not violate due process or double jeopardy. Therefore, where the State presented substantial evidence tending to show that after defendant fatally shot his father-in-law, he fired his weapon at his wife and killed her, and the jury returned guilty verdicts of first-degree murder for each killing, the trial court correctly allowed the jury to consider the murder of each victim as the crime of violence to support the course of conduct aggravating circumstance in sentencing defendant for the murder of the other victim.

**Am Jur 2d, Constitutional Law §§ 813-815; Criminal Law §§ 243-248; Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in**

committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.

**13. Criminal Law § 1347 (NCI4th)— aggravating circumstance—course of conduct—other crimes of violence—charge or conviction not required**

N.C.G.S. § 15A-2000(e)(11) does not require that defendant be charged or convicted of the "other crimes of violence" before the course of conduct aggravating circumstance may be submitted. Rather, the import of the (e)(11) aggravating circumstance is that such crimes connect with the capital murder, whether temporally, by *modus operandi* or motivation, or by some common scheme or pattern.

**Am Jur 2d, Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

**14. Criminal Law § 1347 (NCI4th)— aggravating circumstance—course of conduct—other crime of violence—uncharged assault against third person**

Where the State presented compelling evidence that immediately after fatally shooting his father-in-law and his wife, defendant assaulted his wife's brother with a deadly weapon with the intent to kill him, the trial court did not err by instructing the jury that it could find as an aggravating circumstance for each murder that defendant committed the assault as part of the same course of conduct with the killing of the victims even though defendant has not been charged with the assault.

**Am Jur 2d, Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

STATE v. BOYD

[343 N.C. 699 (1996)]

**15. Criminal Law § 1355 (NCI4th)— mitigating circumstance— no prior criminal history—submission not required**

The trial court did not err by refusing to submit to the jury the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where neither the State nor defendant presented any evidence as to defendant's prior criminal history. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Evidence §§ 180, 1336; Trial §§ 528, 841, 1760.**

**16. Constitutional Law § 309 (NCI4th)— capital sentencing— counsel's concession of aggravating circumstance—record silent as to defendant's consent—no ineffective assistance of counsel**

Assuming *arguendo* that defendant's trial counsel conceded the existence of the sole aggravating circumstance submitted to the jury during his closing argument in a capital sentencing proceeding, this concession did not violate defendant's right to the effective assistance of counsel since (1) defendant's lack of consent to the argument will not be presumed from a silent record, and (2) the decision of *State v. Harbinson*, 315 N.C. 175, which held that in cases in which defendant's trial counsel admits defendant's guilt to the jury without defendant's consent, the defendant has been denied the effective assistance of counsel *per se* in violation of the Sixth Amendment does not apply to sentencing proceedings.

**Am Jur 2d, Criminal Law §§ 732-753; Trial §§ 841, 1760, 1947.**

**When is attorney's representation of criminal defendant so deficient as to constitute denial of federal constitutional right to effective assistance of counsel—Supreme Court cases. 83 L. Ed. 2d 1112.**

**17. Criminal Law § 1373 (NCI4th)— sentences of death not disproportionate**

Sentences of death imposed upon defendant for two first-degree murders were not excessive or disproportionate to the penalty imposed in similar cases where defendant was convicted of each count of first-degree murder under the theory of malice, premeditation, and deliberation, and the jury found as the sole aggravating circumstance that each murder was part of a course

of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons.

**Am Jur 2d, Criminal Law § 628; Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of death entered by Greeson, J., on 14 July 1994, in Superior Court, Rockingham County, upon two jury verdicts finding defendant guilty of first-degree murder. Heard in the Supreme Court 16 February 1996.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Associate Attorney General, for the State.*

*Harry H. Harkins, Jr., for defendant-appellant.*

MITCHELL, Chief Justice.

On 16 May 1988, defendant was indicted for the 4 March 1988 murders of his estranged wife, Julie Boyd, and her father, Dillard Curry. He was tried capitally. The jury found him guilty and recommended a sentence of death for each murder. On appeal, this Court held that the trial court erred by excusing a juror after a private, unrecorded bench conference with the juror and awarded defendant a new trial. *State v. Boyd*, 332 N.C. 101, 418 S.E.2d 471 (1992).

In June 1994, defendant was again tried capitally and convicted of the first-degree murders of Julie Boyd and Dillard Curry. The jury recommended that defendant be sentenced to death for each murder and the trial court sentenced accordingly. We conclude that defendant received a fair trial free of prejudicial error and that the sentences of death are not disproportionate.

The State's evidence tended to show *inter alia* that on 4 March 1988 defendant entered the home of his estranged wife's father, where

his wife and children were then living, and shot and killed both his wife and her father with a .357 Magnum pistol. The shootings were committed in the presence of defendant's children—Chris, age thirteen; Jamie, age twelve; and Daniel, age ten—and other witnesses, all of whom testified for the State. Immediately after the shootings, law enforcement officers were called to the scene. As they approached, defendant came out of some nearby woods with his hands up and surrendered to the officers.

Later, after being advised of his rights, defendant gave a lengthy inculpatory statement in which he described the fatal shootings:

I walked to the back door [of Dillard Curry's house] and opened it. It was unlocked. As I walked in, I saw a silhouette that I believe was Dillard. It was just like I was in Vietnam. I pulled the gun out and started shooting. I think I shot Dillard one time and he fell. Then I walked past him and into the kitchen and living room area. The whole time I was pointing and shooting. Then I saw another silhouette that I believe was Julie come out of the bedroom. I shot again, probably several times. Then I reloaded my gun. I dropped the empty shell casings onto the floor. As I reloaded, I heard someone groan, Julie I guess. I turned and aimed, shooting again. My only thoughts were to shoot my way out of the house. I kept pointing and shooting at anything that moved. I went back out the same door that I came in, and I saw a big guy pointing a gun at me. I think this was Craig Curry, Julie's brother. I shot at him three or four times as I was running towards the woods.

Dr. Patricio Lara and Dr. John Warren both testified for defendant as experts in forensic psychology. Dr. Lara testified that at the time of the offenses, defendant suffered from an adjustment disorder with psychotic emotional features, alcohol abuse, and a personality disorder with predominate compulsive dependent features. Further, Dr. Lara opined that defendant's emotional condition was impaired and that defendant suffered from some level of alcohol intoxication at the time of the offenses. Likewise, Dr. Warren opined that at the time of the offenses defendant suffered from chronic depression, alcohol abuse disorder, dependent personality disorder, and a reading disability.

[1] In his first assignment of error, defendant argues that the trial court erred in prohibiting Dr. Warren, who testified as an expert in forensic psychology, from testifying that defendant was not acting with a "cool state of mind" during the commission of the murders.

**STATE v. BOYD**

[343 N.C. 699 (1996)]

During a *voir dire* on the admissibility of Dr. Warren's testimony, the following exchange occurred:

Q: Dr. Warren, based on your experience and your review of the records that you described concerning [defendant], do you have an opinion as to whether at the time of the events that Mr. Boyd is charged with, he was acting in a cool state of mind?

A: Yes, sir.

Q: What is that opinion?

A: Because of his emotional problems and in the context of the situation, the context of the situation and his alcohol consumption, I believe that all of his bottled up feelings, that related to his dependent relationship with his wife, exploded at the time of the shooting. That his manner and statements that I have seen indicate an impulsive and explosive act. And if it is possible to use the specific question, that this is not in a calm and cool and rational state of mind, but rather was an impulsive outburst of emotion.

The trial court then questioned Dr. Warren about his understanding of the legal definition of "cool state of mind" and explained the pattern jury instruction that defines the legal concept. After this exchange, Dr. Warren conceded that he "thought he had a better understanding of the legal concept," but from the court's instructions, his understanding was "not as precise" as he thought. Dr. Warren then admitted that the legal import of "cool state of mind" was clearly not the same as the medical meaning, to which he was referring. In light of this admission and after considering arguments from counsel, the trial court ruled that Dr. Warren's testimony that defendant did not act with a "cool state of mind" was inadmissible under Rule 403 of the Rules of Evidence in that such testimony would confuse the jury as to the legal import of the phrase. *See* N.C.G.S. § 8C-1, Rule 403 (1992) (allowing court to exclude otherwise relevant testimony when the probative value of the testimony is substantially outweighed by a danger of confusing the issues).

Defendant argues that Dr. Warren's expert opinion that defendant did not act with a cool state of mind is admissible under the rules of evidence and precedent established by this Court. We disagree and conclude that the trial court did not err by preventing Dr. Warren from using the phrase "cool state of mind" to convey his opinion to the jury that defendant lacked the specific intent necessary to commit premeditated and deliberate murder at the time of the shootings.

Defendant correctly argues that expert opinion testimony is not rendered inadmissible on the basis that it embraces ultimate issues to be determined by the jury. N.C.G.S. § 8C-1, Rule 704 (1992). Further, "expert opinion testimony concerning a defendant's state of mind is admissible to negate the first-degree murder elements of premeditation and deliberation." *State v. Baldwin*, 330 N.C. 446, 460, 412 S.E.2d 31, 39 (1992); *State v. Shank*, 322 N.C. 243, 248-49, 367 S.E.2d 639, 643 (1988). Nevertheless, we have held previously that a trial court does not abuse its discretion by preventing an expert witness from testifying that a defendant did not act in a cool state of mind. *State v. Weeks*, 322 N.C. 152, 167, 367 S.E.2d 895, 904 (1988). In *Weeks* we said:

> Such testimony embraces precise legal terms, definitions of which are not readily apparent to medical experts. What defendant sought to accomplish with this testimony was to have the experts tell the jury that certain legal standards had not been met. . . . Having the experts testify as requested by defendant would tend to confuse, rather than help, the jury in understanding the evidence and determining the facts in issue.

*Id.* at 166-67, 367 S.E.2d at 904.

Defendant argues that *Weeks* is not dispositive because the trial court on *voir dire* explained to Dr. Warren the legal import of acting with a cool state of mind. After this explanation, Dr. Warren conceded that the legal and medical definitions of the phrase differed, but that he meant to convey to the jury that defendant did not act with a cool state of mind in a medical sense. Thus, defendant argues that after the trial court clarified any confusion over the intended use of the phrase, there was no basis for preventing the expert witness from opining that defendant did not act with a cool state of mind in the medical sense. We disagree.

After a careful review of the transcript, we conclude that the trial court did not err under Rule 403 and *State v. Weeks* by excluding Dr. Warren's testimony. Further, the trial court emphasized to Dr. Warren that he could use other terminology to convey his opinion to the jury and ruled that all other questions regarding defendant's state of mind that defendant sought to pose to the expert witness would be allowed. Defendant's assignment of error is overruled.

[2] In another assignment of error, defendant argues the trial court erred by overruling his objection to certain testimony of Craig Curry,

the victims' brother and son. On direct examination, Curry testified
that

> [Defendant] was loading his pistol and he hollered down to
> me, he said come on up here, Craig, I am going to kill you too, and
> when he said that I started thinking, you know, if I run up there
> that is what he was going to do.
>
> . . . .
>
> My brother's girl friend's little girl was down there. I had three
> little younguns [sic] down there and I told [my wife] to get them
> out and get them in the woods because if he gets me I know that
> he is going to kill everybody.

Defendant argues that Craig Curry's statement that "I know that he is
going to kill everybody" was wholly speculative in that the witness
did. not know defendant would kill anyone, much less everyone.
Thus, defendant argues the testimony was erroneously admitted
into evidence over his objection. Further, defendant argues the
admission of this testimony prejudiced him during his capital sen-
tencing proceeding in that it inaccurately portrayed him as a "blood-
thirsty child-killer."

Rule 701 of the Rules of Evidence provides that

> [i]f [a] witness is not testifying as an expert, his testimony in the
> form of opinions or inferences is limited to those opinions or
> inferences which are (a) rationally based on the perception of the
> witness and (b) helpful to a clear understanding of his testimony
> or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1992). Further, this Court

> has long held that a witness may state the "instantaneous conclu-
> sions of the mind as to the appearance, condition, or mental or
> physical state of persons, animals, and things, derived from
> observation of a variety of facts presented to the senses at one
> and the same time." Such statements are usually referred to as
> shorthand statements of facts.

*State v. Williams*, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987) (citation
omitted).

Craig Curry's testimony that he believed that "[defendant was]
going to kill everybody" clearly falls within the realm of lay testimony
permitted by Rule 701 and *State v. Williams*. Prior to defendant's

objection, Curry had testified that he had seen defendant shoot his father and reload his gun. Curry had testified that defendant was hollering at defendant's own children, that Curry's immediate reaction was to protect his own family, and that Curry told his wife to call the police as he retrieved his own gun from a security box. In the context of this testimony, Curry's statement that "[defendant was] going to kill everybody" was an instantaneous conclusion as to defendant's condition and state of mind. It was based upon Curry's opportunity to observe defendant shoot his own father, holler at his own children, reload his weapon, and threaten to shoot Curry. Thus, the trial court did not err by overruling defendant's objection to Craig Curry's statement. Defendant's assignment of error is overruled.

**[3]** In his next assignment of error, defendant argues that the trial court erred by failing to instruct the jury on voluntary manslaughter. However, because the trial court instructed the jury on first- and second-degree murder for each killing and the jury returned a verdict of guilty of first-degree murder based on malice, premeditation and deliberation for each, any error in failing to give an instruction on voluntary manslaughter is harmless. *See, e.g., State v. Exxum*, 338 N.C. 297, 300, 449 S.E.2d 554, 556 (1994). Defendant's assignment of error is therefore overruled.

**[4]** In another assignment of error, defendant argues that the trial court erred by refusing to instruct the jury on voluntary intoxication. Defendant contends that substantial evidence was introduced at trial that "would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill." *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). Thus, defendant argues he has met his burden of production on the issue of voluntary intoxication and was entitled to the instruction.

In support of this argument, defendant points to his own testimony at trial. Defendant testified that he remembered buying twelve beers the day of the murders and that he thought he drank all the beer because he "[didn't] let beer sit around." In addition, defendant notes that Dr. Warren testified that defendant had "alcohol intoxication at the time of these offenses" and that two law enforcement officers would have tested him for a driving while impaired (DWI) infraction had the officers stopped defendant while driving. *But see State v. Medley*, 295 N.C. 75, 80, 243 S.E.2d 374, 378 (1978) (evidence of a blood alcohol concentration that would violate motor vehicle laws does not require an instruction on voluntary intoxication).

STATE v. BOYD

[343 N.C. 699 (1996)]

Taking the evidence in the light most favorable to defendant, *State v. McCray*, 312 N.C. 519, 324 S.E.2d 606 (1985), defendant has failed to produce substantial evidence that he was so intoxicated that he could not form a deliberate and premeditated intent to kill. At best, the combined testimony of defendant and the other witnesses establishes that defendant was intoxicated at the time of the murders. Evidence of mere intoxication, however, is not sufficient to meet defendant's burden of production. *State v. McQueen*, 324 N.C. 118, 141, 377 S.E.2d 38, 51 (1989). Such testimony did not tend to show that "at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill." *Mash*, 323 N.C. at 346, 372 S.E.2d at 536; *McQueen*, 324 N.C. at 140, 377 S.E.2d at 51. Therefore, the trial court was not required to instruct on voluntary intoxication. *Id.* Defendant's assignment of error is overruled.

[5] Defendant next assigns as error the trial court's refusal to instruct on the defense of unconsciousness or automatism. Relying on *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983), defendant argues that his own uncontradicted testimony was sufficient evidence from which the jury could have found that he was unconscious at the time he committed the murders. On direct examination, defendant testified that he could not remember many of his actions on the day of the crimes, attributing his memory loss to flashbacks from his experiences in Vietnam. He stated that he could not remember driving to Dillard Curry's residence and that he had no memory of picking up his son before driving to the residence. When asked if he had a clear recollection of what happened inside the Curry residence, defendant testified:

What I remember come [sic] back to me since this has happened. I can remember as I walked into the door I shot again and I stepped up into the kitchen and Julie was coming out of the living room and the living room stepped down into the kitchen and she stopped and right there she saw me and said, "Oh, my God," and put her hands out in front of her and said, "don't, please don't, I am sorry."

All of the time she was saying that she was walking backwards and I took my eyes off her and I looked down and my hand raised and I shot her. And I looked back and she was laying face down.

Based on this and other similar statements relating his memory loss, defendant argues that there was sufficient evidence that he suffered from blackouts to warrant an instruction on the unconsciousness defense.

First recognized by this Court in *State v. Mercer*, 275 N.C. 108, 165 S.E.2d 328 (1969), *overruled in part on other grounds by State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975), the defense of unconsciousness, or automatism, is a complete defense to a criminal charge. *Jerrett*, 309 N.C. at 264, 307 S.E.2d at 353. This is so because " '[t]he absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability.' " *Id.* (quoting *Mercer*, 275 N.C. at 116, 165 S.E.2d at 334). Unconsciousness is an affirmative defense, and the burden rests upon defendant to prove its existence to the satisfaction of the jury. *Caddell*, 287 N.C. at 290, 215 S.E.2d at 363. After a careful scrutiny of the transcript, we conclude that defendant has not met his burden.

Defendant has pointed only to his own testimony at trial as evidence to support an instruction on unconsciousness. Although defendant repeatedly testified that he had difficulty recalling the events and his actions surrounding the murders, he was able to recall many of the graphic details of the murders as shown by the inculpatory statement he gave to police within hours of committing the murders. *See State v. Fisher*, 336 N.C. 684, 705, 445 S.E.2d 866, 877 (1994) (defendant's detailed statement the day of the murder belies claim of unconsciousness), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 665 (1995). After surrendering to police the day of the murders, defendant gave a lengthy statement. At no point during this statement did defendant attribute his actions to blackouts, amnesia, or automatism. Additionally, he demonstrated a very complete and detailed recollection of his actions. Defendant's ability to recall completely the details of the killings within several hours of the commission of those crimes contradicts his testimony at trial that he could not remember the events surrounding the murders. In light of his detailed confession, defendant's testimony at trial concerning his alleged inability to remember many of the events surrounding the crimes implies that any such memory lapses were attributable to nothing but the passage of time.

The case *sub judice* is therefore distinguishable from *State v. Jerrett*, the decision on which defendant relies. In *Jerrett*, the defend-

ant's evidence of unconsciousness included uncontradicted testimony from both defendant and his parents. The defendant described in detail blackouts that he had experienced on numerous occasions since serving in Vietnam. He related to the jury that he would walk, talk, and drive for hours without any recollection of doing so. The defendant's father also testified that he had observed defendant on at least a half dozen occasions during which defendant was experiencing blackouts. In addition, this Court said that "defendant's very peculiar actions in permitting the kidnapped victim to repeatedly ignore his commands and finally lead him docilely into the presence and custody of a police officer lends credence to his defense of unconsciousness." *Jerrett*, 309 N.C. at 266, 307 S.E.2d at 353. Based on this evidence, this Court concluded that the trial court should have given the requested instruction on unconsciousness. *Id.*; *see also State v. Fields*, 324 N.C. 204, 212, 376 S.E.2d 740, 745 (1989) (instruction required based on testimony from expert witness that defendant was unable to exercise conscious control of his physical actions at the moment of the shooting). However, unlike the testimonial corroborating evidence and other evidence that supported Jerrett's claim that he committed his crimes during a blackout, defendant in the case *sub judice* relies only upon his own self-serving testimony at trial that is wholly contradicted by the statement he gave to police within hours of committing the murders. Further, neither of defendant's expert witnesses gave testimony in support of defendant's unconsciousness claim. We conclude that the trial court did not err by refusing to instruct the jury on unconsciousness. Defendant's assignment of error is overruled.

After the jury returned a verdict finding defendant guilty of first-degree murder, the trial court conducted a capital sentencing proceeding as required by N.C.G.S. § 15A-2000. The sole aggravating circumstance submitted and found by the jury was that the murder "was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." N.C.G.S. § 15A-2000(e)(11). One or more jurors found two statutory and eighteen nonstatutory mitigating circumstances to exist. The jury found that the mitigating circumstances were insufficient to outweigh the aggravating circumstance and recommended the imposition of the death penalty.

Defendant assigns as error the trial court's refusal to peremptorily instruct the jury on two statutory mitigating circumstances and

two nonstatutory circumstances. A trial court should give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted and manifestly credible evidence. *State v. Gay*, 334 N.C. 467, 492-93, 434 S.E.2d 840, 854-55 (1993). However, the peremptory instructions to be given with regard to *nonstatutory* mitigating circumstances differ from those to be given with regard to *statutory* mitigating circumstances. *State v. Green*, 336 N.C. 142, 172-74, 443 S.E.2d 14, 32, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994).

[6] Defendant first argues in support of this assignment of error that the evidence as to the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance, that the murders were committed while defendant was under the influence of mental or emotional disturbance, was uncontradicted. Defendant contends that the State failed to present testimony that contradicted the testimony of Drs. Warren and Lara. Dr. Warren opined that at the time of the murders, defendant suffered from chronic depression, acute alcohol intoxication, dependent personality disorder, and a learning disability. Dr. Lara concurred in this diagnosis, which defendant argues supports the (f)(2) mitigating circumstance.

Even though the expert testimony of Drs. Warren and Lara is some evidence from which the jury could determine that defendant was under the influence of a mental or emotional disturbance, we conclude that such evidence was contradicted. Steve Lowman, who testified on behalf of defendant, stated that defendant was his usual self and did not appear disoriented or unaware of what was going on around him on the very afternoon of the murders. Further, Detective Rick Hopper of the Rockingham County Sheriff's Department testified that defendant was able to provide a detailed statement in which he confessed to the murders and to answer numerous questions within the hour after his arrest. This evidence, in conjunction with defendant's ability to recall many of the graphic details of the murders, contradicts the expert testimony that defendant was under the influence of a mental or emotional disturbance when he murdered his wife and father-in-law. *See State v. Noland*, 312 N.C. 1, 22-23, 320 S.E.2d 642, 655-56 (1984) (evidence of defendant's actions and statements before and after the shootings contradicted evidence that defendant was operating under a mental or emotional disturbance), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). Thus, the trial court correctly denied defendant's request for a peremptory instruction as to the (f)(2) mitigating circumstance.

STATE v. BOYD

[343 N.C. 699 (1996)]

**[7]**   Defendant also argues in support of this assignment that the trial court erred by refusing to peremptorily instruct the jury as to the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance, that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. Dr. Warren testified that both defendant's capacity to appreciate the criminality of his conduct and his capacity to conform his conduct to the requirements of law were impaired. Dr. Lara testified that defendant's capacity to appreciate the criminality of his conduct was not impaired but that his capacity to conform his behavior to the requirements of law was impaired. Defendant concedes that Dr. Lara contradicted Dr. Warren on whether defendant's capacity to appreciate the criminality of his conduct was impaired. Nevertheless, he argues that because the (f)(6) mitigating circumstance is written in the disjunctive, the trial court must give a peremptory instruction if uncontradicted and manifestly credible evidence shows *only* that his capacity to conform his conduct to law was impaired. Evidence in the present case tended to show that immediately after he committed the murders, defendant called 911, identified himself, and alerted the dispatcher to the murders. Thereafter, defendant surrendered and cooperated with law enforcement. Such evidence was sufficient to put in controversy defendant's capacity to conform his conduct to the requirements of law, and the trial court correctly refused to give a peremptory instruction.

**[8]**   Defendant also argues in support of this assignment of error that the trial court erred by failing to give peremptory instructions as to the nonstatutory mitigating circumstances (1) that defendant suffered from learning disabilities which hindered his chances for success in school and (2) that defendant was not acting in an entirely calm, rational manner at the time of each killing. We conclude the trial court correctly refused to give peremptory instructions as to these nonstatutory mitigating circumstances. Defendant argues that Dr. Warren's testimony that a learning and reading disability hindered defendant's chances for success in school was uncontradicted and credible evidence. We disagree. Defendant's school record, which was introduced into evidence, did not identify any disability. While the school record did establish that defendant dropped out of school in the ninth grade, we conclude that Dr. Warren's assessment over thirty years after defendant dropped out is not so manifestly credible as to mandate a peremptory instruction.

Regarding the nonstatutory mitigating circumstance that defendant was not acting in an entirely calm, rational manner at the time of each killing, the evidence that defendant called 911 and surrendered to law enforcement immediately after he committed the crimes is sufficient to put in controversy the existence of this circumstance. Thus, assuming *arguendo* that this nonstatutory circumstance could ever properly be deemed mitigating, the trial court correctly refused to peremptorily instruct the jury as to its existence. For the foregoing reasons, this assignment of error is without merit and is overruled.

By his next assignment of error, defendant argues that his state constitutional right to be present at all stages of his trial was violated when the trial court conducted a conference in chambers to discuss defendant's proposed mitigating circumstances without defendant's actual presence. Before the charge conference began, the following colloquy took place:

> COURT: I don't mind having the defendant brought in, even though it's recorded. Give him an opportunity if he wants to be present. I can have you all relay all this information. In addition, it is recorded.
>
> I feel like this is better for all the parties. That's all up to you whether we bring him in or not as far as that goes. He might find this extremely boring, but at the same time—
>
> [DEFENSE COUNSEL]: My sense is that he probably prefers to go back to the jail, for the truth of it.
>
> COURT: I thought that, too, but I am recording it for anything that needs to be put, you know, on the record. But it has to be on the record if it's not in his presence, I know, but I just—if you wanted to bring him in, if you thought he was that interested in the law.
>
> [DEFENSE COUNSEL]: He's not.

**[9]** It is well settled that Article I, Section 23 of the Constitution of North Carolina guarantees a criminal defendant the right to be present at every stage of his trial. *State v. Brogden*, 329 N.C. 534, 541, 407 S.E.2d 158, 163 (1991); *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990). In capital cases, this right is not waivable. *Huff*, 325 N.C. at 29, 381 S.E.2d at 651. The absence of a defendant from some portion of his capital trial is not automatically reversible error,

however, as this Court applies a harmless error standard in such cases under which the State has the burden of establishing that the error was harmless beyond a reasonable doubt. *Id.* at 33, 381 S.E.2d at 653.

[10] In the case *sub judice,* the trial court held a recorded conference in chambers to discuss defendant's proposed mitigating circumstances without defendant present. However, defendant was represented by counsel at the conference, and the entire conference was transcribed and made part of the record. Defendant's counsel were given the opportunity to preserve on the record every objection to the trial court's rulings and the reasons for their objections. Further, the substance of each mitigating circumstance requested by defendant and discussed by defendant's counsel during the conference was later submitted to the jury. Therefore, we conclude that the error in conducting a conference in chambers to discuss defendant's proposed mitigating circumstances, without defendant present, was harmless beyond a reasonable doubt. *See Brogden,* 329 N.C. at 542, 407 S.E.2d at 163 (violation of defendant's right to be present held harmless beyond a reasonable doubt); *State v. Wise,* 326 N.C. 421, 433, 390 S.E.2d 142, 149-50 (same), *cert. denied,* 498 U.S. 853, 112 L. Ed. 2d 113 (1990). This assignment of error is without merit and is overruled.

In another assignment of error, defendant argues that his death sentence must be vacated because the trial court erred by submitting as an aggravating circumstance that the murders for which he was convicted were part of a course of conduct by defendant which included the commission by him of other crimes of violence against another person. N.C.G.S. § 15A-2000(e)(11). Defendant contends that the (e)(11) aggravating circumstance is unconstitutionally vague, overbroad, and indefinite. Alternatively, defendant argues that it was not supported by the evidence in the case *sub judice.* We disagree with defendant and conclude the trial court properly submitted this aggravating circumstance to the jury.

[11] The (e)(11) aggravating circumstance itself does not violate due process by reason of unconstitutional vagueness. *State v. Williams,* 305 N.C. 656, 685, 292 S.E.2d 243, 261, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). Further, we conclude that the evidence in the present case was sufficient to support its submission to the jury.

[12] The State presented substantial evidence tending to show that after defendant fatally shot Dillard Curry, he fired his weapon at Julie

Boyd, intending to kill her. The jury, by returning guilty verdicts of first-degree murder for each killing, found beyond a reasonable doubt that defendant had committed the two murders. We have previously held under similar circumstances that the submission of one killing as an aggravating circumstance for another murder under the (e)(11) aggravating circumstance is correct and does not violate due process of law or double jeopardy. *State v. Pinch,* 306 N.C. 1, 30-31, 292 S.E.2d 203, 225, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *over-ruled on other grounds by State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 650 (1995), *and by State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988). Thus, the trial court correctly allowed the jury to consider the murder of Dillard Curry as the crime of violence to support the (e)(11) aggravating circumstance in sentencing defendant for the murder of Julie Boyd. Likewise, the trial court was correct to allow the jury to consider the murder of Julie Boyd as the crime of violence that supported the (e)(11) aggravator in sentencing defendant for the murder of Dillard Curry. In summary, therefore, the trial court properly submitted the aggravating circumstance that each of the murders for which defendant stood convicted was part of a course of conduct in which he engaged and which included the commission of other crimes of violence against another person. *Id.; see also State v. Chapman,* 342 N.C. 330, 345, 464 S.E.2d 661, 669-70 (1995); *State v. Cummings,* 332 N.C. 487, 507-12, 422 S.E.2d 692, 703-06 (1992); *State v. Brown,* 306 N.C. 151, 183, 293 S.E.2d 569, 589, *cert. denied,* 459 U.S. 1080, 74 L. Ed. 2d 642 (1982).

Defendant argues, however, that the trial court did not rely solely on the separate killings for which defendant was found guilty as the other crime of violence. He contends that the trial court improperly instructed the jury that it also could consider an alleged and uncharged assault on Craig Curry as that other crime. Defendant argues that relying on this alleged assault was error in that a prerequisite to the submission of the course of conduct circumstance is that defendant be charged with the other crime of violence. We disagree.

[13] N.C.G.S. § 15A-2000(e)(11) does not require that defendant be charged or convicted of the "other crimes of violence" before that aggravating circumstance may be submitted. Unlike other aggravating circumstances that require a conviction, the course of conduct aggravating circumstance is supported not by convictions, but crimes. *Compare* N.C.G.S. § 15A-2000(e)(11) *with* N.C.G.S. § 15A-2000(e)(2) (1995) ("defendant had been previously convicted of

another capital felony") *and* N.C.G.S. § 15A-2000(e)(3) ("defendant had been previously convicted of a felony involving the use or threat of violence"). Further, in several decisions, this Court has found that the course of conduct aggravating circumstance was properly submitted when the "other crimes of violence" consisted of evidence of uncharged crimes. *State v. Price*, 326 N.C. 56, 80-83, 388 S.E.2d 84, 98-99 (course of conduct supported by uncharged arson), *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990); *State v. Vereen*, 312 N.C. 499, 324 S.E.2d 250 (course of conduct supported by uncharged assault with a deadly weapon inflicting serious bodily injury), *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985). As our decisions have instructed, the import of the (e)(11) aggravating circumstance is not that defendant has been charged or convicted of such crimes, but that such crimes connect with the capital murder, whether temporally, by *modus operandi* or motivation, or by some common scheme or pattern. *Cummings*, 332 N.C. at 510, 422 S.E.2d at 705.

**[14]** In the case *sub judice*, the State presented compelling evidence that immediately after fatally shooting both Dillard Curry and Julie Boyd, defendant turned his weapon and attention toward Craig Curry. Curry testified that while defendant reloaded his weapon, defendant yelled to him, "Come on up here, Craig. I am going to kill you too." Further, defendant testified at trial that

> I remember that he [Craig Curry] was standing—I can't swear that it was him. The silhouette was facing toward me with his arm out. I don't know if he had a gun or was just pointing, so I came up with the pistol and started shooting at the silhouette holding it and it took off running across the street.

This was substantial evidence that defendant assaulted Craig Curry with a deadly weapon with the intent to kill him. Thus, the trial court did not err by instructing the jury that it could find as an aggravating circumstance that defendant committed the crime of assault with a deadly weapon with the intent to kill as part of the same course of conduct with the killing of the victims. Defendant's assignment of error is without merit and is overruled.

**[15]** Defendant also assigns as error the trial court's refusal to submit to the jury the statutory mitigating circumstance that defendant had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1). Defendant concedes, however, that neither the State nor defendant presented any evidence as to defendant's prior crimi-

nal history. Thus, the trial court did not err by refusing to instruct the jury on the (f)(1) mitigating circumstance. *State v. Gibbs*, 335 N.C. 1, 57, 436 S.E.2d 321, 353 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 881 (1994); *see also Delo v. Lashley*, 507 U.S. 272, 277, 122 L. Ed. 2d 620, 626 (1993) (concluding that "[n]othing in the Constitution obligates state courts to give mitigating circumstance instructions when no evidence is offered to support them").

**[16]** In another assignment of error, defendant argues that his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel allegedly conceded that the jury should find the sole aggravating circumstance submitted to the jury. During closing arguments of the capital sentencing proceeding, defense counsel stated:

> Ms. Foster [the prosecutor] has said, consider ten minutes in Kenneth Boyd's life on March fourth, 1988 and take his life. That's her argument. How many times have you heard her talk about what happened on March fourth, 1988, and base her whole argument to you on taking Kenneth's life based on what happened in ten minutes out of Kenneth's life?
>
> . . . .
>
> We can't take ten minutes of a person's life and consider that as outweighing everything else they ever did, and that's what Ms. Foster is asking you to do. That's not the law, that's not just, and that's not fair.
>
> *Take the ten minutes to find the aggravating circumstance.* If you take that ten minutes, think about all of the other evidence that you are required to consider, that you've got to consider, because it's lawful mitigating evidence in spite of what Ms. Foster says.

(Emphasis added.)

Assuming *arguendo* that by this assignment defendant's trial counsel conceded the existence of the aggravating circumstance, the record is silent as to whether defendant consented to the argument. This Court will not presume defendant's lack of consent from a silent record. *State v. House*, 340 N.C. 187, 456 S.E.2d 292 (1995).

Defendant also argues in support of this assignment that his trial counsel's alleged concession was tantamount to a concession of guilt without his consent in violation of the Sixth Amendment. In *State v.*

*Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), this Court held that in cases in which a defendant's trial counsel, without consent from the defendant, admits the defendant's guilt to the jury, the defendant has been denied effective assistance of counsel, *per se* in violation of the Sixth Amendment. We have recently concluded, however, that *Harbison* does not apply to sentencing proceedings. *State v. Walls*, 342 N.C. 1, 57, 463 S.E.2d 738, 768 (1995), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 64 U.S.L.W. 3763 (1996). Further, as already pointed out, we will not presume the defendant's lack of consent from the silent record before us. Thus, defendant's assignment of error is overruled.

Defendant also has presented assignments of error raising seven additional issues that have been previously decided contrary to his position by this Court: (1) that the death penalty statute, N.C.G.S. § 15A-2000, is unconstitutional on the grounds that execution by lethal gas violates the Eighth Amendment; (2) that the trial court erred by refusing to allow defendant to introduce evidence concerning parole eligibility; (3) that a "death qualified" jury violates the Eighth Amendment; (4) that the trial court erred by refusing to allow defendant to rehabilitate jurors challenged for cause on death qualification grounds; (5) that the instruction that the jury has a duty to recommend a sentence of death upon certain findings is unconstitutional; (6) that placing the burden of proof of mitigating circumstances on defendant is unconstitutional; and (7) that the death penalty violates the Eighth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 19 of the Constitution of North Carolina. We have reviewed defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

[17] Having concluded that defendant's trial and separate capital sentencing proceeding were free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's finding of the aggravating circumstance on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts,

and briefs in the present case, we conclude that the record fully supports the aggravating circumstance found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In the present case, defendant was convicted of two counts of first-degree murder under the theory of malice, premeditation, and deliberation. The jury found as the sole aggravating circumstance that each murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). One or more jurors found two statutory mitigating circumstances for each murder, that the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2), and that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6). In addition, one or more jurors found eighteen nonstatutory mitigating circumstances.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We do not find this case substantially similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases is distinguishable from the present case.

None of the seven cases in which this Court has found the death penalty disproportionate involved a defendant convicted of murdering multiple victims. *See State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). Further, we have said that the fact that defendant is a multiple killer is "[a] heavy factor to be weighed against the defendant." *State v. Laws*, 325 N.C. 81, 123, 381 S.E.2d 609, 634 (1989), *sentence*

*vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990); *see also State v. McLaughlin,* 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 879 (1996); *State v. Garner,* 340 N.C. 573, 459 S.E.2d 718 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 872 (1996); *State v. Robbins,* 319 N.C. 465, 356 S.E.2d 279, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Because the jury in the present case found defendant guilty of two counts of first-degree murder, this case is easily distinguishable from the seven cases in which the death penalty has been found disproportionate by this Court.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum,* 334 N.C. at 244, 433 S.E.2d at 164. We have reviewed all of the cases in the pool of similar cases used to fulfill this statutory duty and conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Accordingly, we conclude that the sentences of death recommended by the jury and ordered by the trial court in the present case are not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error, and that the sentences of death entered in the present case must be and are left undisturbed.

NO ERROR.