STATE OF NORTH CAROLINA v. JOE CLEVEN MEDLEY

No. 4

(Filed 8 May 1978)

1. **Criminal Law § 89.3— witnesses' prior written statements—admissibility for corroboration**

Prior written statements of two witnesses in a homicide prosecution were properly admitted for corroborative purposes where the court specifically instructed the jury that the statements were to be considered by them for cor-

roboration only and any part which did not corroborate the witnesses' testimony should be disregarded by them; minor variances between the statement and the witnesses' testimony did not affect the admissibility of the statements but only the weight and credibility to be given them by the jury; and defendant's general objection was ineffective since he failed to specify any portion of the evidence which, standing alone, failed to corroborate the trial testimony.

2. **Criminal Law § 8.1— murder of police officer—intoxication as defense—instructions not required**

In a prosecution for the first degree murder of two police officers, testimony by defendant that he had had a few drinks before the murders but that he was not drunk, and evidence that he had a blood alcohol content of .12 percent was insufficient to require an instruction by the trial court on the law of intoxication as a defense since the breathalyzer test is applicable only to criminal actions arising out of the operation of a motor vehicle and has no application to criminal responsibility for homicide; a person may be under the influence of intoxicants in violation of the motor vehicle laws, G.S. 20-138, and yet be quite capable of forming and carrying out a specific intent to kill; and for intoxication to constitute a defense it must appear the defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequences of his act.

DEFENDANT appeals from judgments of *Collier, J.,* entered at the 9 May 1977 Session, DAVIDSON Superior Court.

Defendant was tried upon bills of indictment charging him with the first degree murders of Officers Dennis F. Spinnett and Robert Crawford of the Thomasville Police Department.

The State's evidence tends to show that on 8 January 1977 Officers Spinnett and Crawford were summoned to a residence at 805 Douglas Drive in Thomasville where defendant had been threatening several people with a pistol. When the officers arrived, several people, including defendant, walked next door to defendant's residence at 807 Douglas Drive. The officers followed and there attempted to arrest Bobby Lindsay, one of defendant's friends. Defendant shot the officer attempting to effect the arrest, then shot the other officer when he came to the aid of his colleague.

The testimony of the State's witnesses concerning the details of the killings is not entirely consistent. Three witnesses testified that they actually saw defendant shoot the policemen. One of these witnesses said defendant drew the gun from his boot; another testified the gun was pulled from defendant's back

pocket. Two of the three witnesses stated the shooting occurred after the officers had wrestled Bobby Lindsay to the floor in an effort to subdue him; Bobby Lindsay testified he was peaceably submitting to the officers when defendant opened fire. All of these witnesses gave statements to police officers investigating these killings, and these prior statements were offered in corroboration of the eyewitness testimony at trial. Additionally, the State offered the testimony of several persons who saw defendant shoot a pistol into the foot of Willie Meaders of 805 Douglas Drive shortly before the officers arrived.

Expert testimony established that the shots which killed the police officers were fired from a .38 caliber revolver which defendant admitted owning.

Defendant offered the testimony of Mrs. Josephine Medlin, who stated that she saw Bobby Lindsay holding a gun at the time the first officer was shot. Defendant testifed that it was Lindsay who shot both policemen while resisting their attempts to arrest him. He further testifed that he slipped the .38 caliber pistol to Lindsay when they were leaving 805 Douglas Drive as the officers arrived. Defendant also presented testimony that an SBI agent investigating the killings had requested that warrants for first degree murder be drawn against both defendant and William Junior (Bobby) Lindsay.

The jury found defendant guilty of first degree murder in each case, and from two consecutive terms of life imprisonment, he appealed to this Court pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Patricia B. Hodulik, Associate Attorney, for the State of North Carolina.*

*G. Thompson Miller, Attorney for defendant appellant.*

HUSKINS, Justice.

[1] After Willie James Meaders and Glossie Lee Carter had testified for the State, a prior statement made by each was admitted, over objection, for corroborative purposes. Defendant contends these prior statements do not corroborate the testimony of the witnesses and points to certain variances between the testimony and the prior statement of each witness. Admission of

the statements for corroborative purposes constitutes defendant's first assignment of error.

The admissibility of a prior consistent statement of a witness to corroborate his testimony is a long established rule of evidence in this jurisdiction. *See* 1 Stansbury's North Carolina Evidence § 51 (Brandis rev. 1973); *State v. Bennett*, 226 N.C. 82, 36 S.E. 2d 708 (1946). Even so, the prior statement must in fact corroborate the testimony of the witness, *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975); and such statement is not admitted as substantive evidence of the facts stated but solely for the purpose of affirming the credibility of the witness. *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960); 1 Stansbury's North Carolina Evidence § 52 (Brandis rev. 1973). Slight variations in corroborative evidence do not render it inadmissible. "If the previous statements offered in corroboration are generally consistent with the witness's statement, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury." *State v. Britt, surpa* at 535, 231 S.E. 2d at 650. *Accord, State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972); *State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965). Furthermore, if a portion of a prior statement is consistent with the testimony of the witness at trial and thus competent for corroborative purposes while other portions are not, a general objection will not suffice. "Rather, it is the duty of the objecting party to call to the attention of the trial court the objectionable part." *State v. Britt, supra* at 536, 231 S.E. 2d at 650. *Accord, State v. Tinsley*, 283 N.C. 564, 196 S.E. 2d 746 (1973); *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963); *State v. Litteral*, 227 N.C. 527, 43 S.E. 2d 84 (1947).

Applying these principles to the challenged evidence in this case, we hold that the prior written statements of Willie James Meaders and Glossie Lee Carter were properly admitted for corroborative purposes. The trial judge reiterated for the jury's guidance that such evidence was admitted for corroborative purposes only and instructed the jury "if any portion of these statements does not tend to corroborate their testimony at this trial, you will disregard that portion of the statements completely and won't consider it in any way."

For the sake of brevity the testimony of these witnesses and the challenged written statement of each are not set out verbatim. It would serve no useful purpose to do so. When each prior statement is compared with the testimony of the witness who made it, no material variance appears. The substance of both the statement and the testimony describes a quarrel between defendant and Willie James Meaders in the course of which defendant shot Meaders in the foot. The minor variances complained of do not impair the admissibility of the prior statements for corroborative purposes, but affect only the weight and credibility which is always for the jury. *State v. Britt, supra.* Moreover, defendant's general objection was ineffective since he failed to specify any portion of the evidence which, standing alone, fails to corroborate the trial testimony. *State v. Tinsley, supra.*

For the reasons stated, defendant's first assignment is overruled.

[2] In his second assignment defendant contends the trial judge erred in failing to instruct the jury on the law of intoxication as a defense. However, it was conceded on oral argument that the assignment has no merit. The record as well as the law supports the concession.

Voluntary drunkenness is not a legal excuse for crime. *State v. Murphy,* 157 N.C. 614, 72 S.E. 1075 (1911). Even so, where, as here, a specific intent to kill is an essential element of the offense charged, intoxication may negate the existence of the requisite intent. If at the time Officers Spinnett and Crawford were killed defendant Medley was so intoxicated that he was utterly incapable of forming a specific intent to kill, he could not be guilty of murder in the first degree. *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968). The evidence must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. *State v. Shelton,* 164 N.C. 513, 79 S.E. 883 (1913). In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon. *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975). The question then, in this case, is whether there was evidence that defendant was intoxicated to such extent

that he was utterly incapable of forming a specific intent to kill so as to require an instruction on intoxication by the trial judge.

In his own testimony before the jury defendant stated: "I had had two or three drinks and beer when I went over there. I took a drink with some of my friends what was in there and with William Lindsay, who was in the kitchen. He had something to drink. He was drinking before I was. I knew he was drinking and he had a good bunch to drink. He was drunker than I was because I wasn't drunk; but he was drunker than I was."

Scott Washam, a forensic chemist with the State Bureau of Investigation, testified with respect to the blood alcohol content of the defendant and William Junior Lindsay in pertinent part as follows: ". . . Joe Cleven Medley had a blood alcohol content of .12 percent and William Junior Lindsay had a blood alcohol content of .22 percent. . . . Prima facie intoxication in North Carolina is considered to be .10."

For the reasons which follow, we hold that the foregoing evidence is insufficient to require a charge on intoxication.

In the first place, the chemical analysis (Breathalyzer) test authorized by G.S. 20-139.1 is, by its express terms, applicable only to criminal actions arising out of the operation of a motor vehicle and has no application to criminal responsibility for homicide. *State v. Bunn*, 283 N.C. 444, 196 S.E. 2d 777 (1973). In the second place, a person may be "under the influence" of intoxicants in violation of the motor vehicle laws, G.S. 20-138, and yet be quite capable of forming and carrying out a specific intent to kill. "The influence of intoxication upon the question of existence of premeditation depends upon its degree and its effect upon the mind and passion. For it to constitute a defense it must appear that defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequences of his act." *State v. Cureton*, 218 N.C. 491, 494, 11 S.E. 2d 469, 470-71 (1940). *Accord, State v. Bunn, supra; State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972); *State v. Wilson*, 280 N.C. 674, 187 S.E. 2d 22 (1972).

Thus it is apparent that the evidence with respect to defendant's intoxication is insufficient to support a finding that by reason of intoxication he was utterly unable to form a specific intent to kill, after premeditation and deliberation. Hence no charge

on the subject was necessary in this case. Defendant's second assignment is overruled.

Defendant's third and final assignment of error is based on denial of his motion for a new trial. Such motion is addressed to the discretion of the trial court and its denial is not reviewable absent abuse of discretion. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). Since no error was committed with respect to the admission of corroborative evidence or with respect to the judge's failure to charge on intoxication, denial of the motion for a new trial was entirely proper.

This record discloses a callous killing without provocation of two police officers in line of duty. For those crimes defendant has had a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.