STATE OF NORTH CAROLINA v. GARY WAYNE LONG

No. 19A01

(Filed 18 December 2001)

**1. Criminal Law— requested instruction—voluntary intoxication—utterly incapable standard**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's request to instruct the jury on voluntary intoxication as a defense to premeditated and deliberate murder, because defendant failed to satisfy the high threshold utterly incapable standard based on the facts that: (1)

**STATE v. LONG**

[354 N.C. 534 (2001)]

defendant had a sufficient amount of time to become intoxicated after committing the murder; (2) no evidence suggests the degree of defendant's intoxication, if any, at the time of the murder; (3) evidence of defendant's actions designed to hide defendant's participation or to clean up after the murder demonstrates that defendant could plan and think rationally, and thus, was not so intoxicated at the time of the murder as to negate defendant's ability to form specific intent; and (4) the trial court submitted the lesser-included offense of second-degree murder giving the jurors the option to find that defendant failed to have the specific intent necessary.

**2. Constitutional Law— effective assistance of counsel— preservation of issue—postconviction motion for appropriate relief**

Although defendant contends he received ineffective assistance of counsel in a capital first-degree murder prosecution based on his counsel's preparation and failure to preserve the intoxication issue, the record discloses that evidentiary issues need to be developed before defendant will be in a position to adequately raise this claim, and defendant can raise this issue in a postconviction motion for appropriate relief.

**3. Sentencing— capital—aggravating circumstances—victim engaged in performance of official duties as a witness at time of murder**

The trial court erred in a capital first-degree murder prosecution by submitting the N.C.G.S. § 15A-2000(e)(8) aggravating circumstance that the victim was "engaged in" the performance of her official duties as a witness at the time of the murder where the evidence showed that defendant had been charged with assaulting the victim and the victim was to be a witness against defendant but was not actively participating in any of her duties as a witness at the time she was killed. To the extent that language in *State v. Gray*, 347 N.C. 143, 491 S.E. 2d 538 (1997) implies that a witness is engaged in her official duties from the time she swears out a warrant until she completes her testimony, that language is disavowed.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by McHugh, J., on 16 September 1999 in Superior Court, Rowan County, upon a jury ver-

dict finding defendant guilty of first-degree murder. Heard in the Supreme Court 10 September 2001.

*Roy A. Cooper, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Paul M. Green for defendant-appellant.*

PARKER, Justice.

Defendant Gary Wayne Long was indicted on 9 February 1998 for the first-degree murder of his mother, Wilma Yates Lowder. Defendant was tried capitally and found guilty of first-degree murder on the basis of premeditation and deliberation. Following a capital sentencing proceeding, the jury recommended a sentence of death; and the trial court entered judgment accordingly.

The State's evidence tended to show that defendant was the son of the seventy-two-year-old victim and that he lived with her in Kannapolis, North Carolina, at the time of the crime.

The relationship between the victim and defendant was checkered with prior acts of violence. The victim had previously told others that defendant was abusive to her and had told her he wished she would die. The victim had mentioned that defendant had held a knife to her throat but said she was afraid that defendant would harm her if she took any action against him. A friend of the victim's testified that the victim had told him three to four months before the murder that defendant repeatedly said to her, "Die Bitch," and, "[G]o to hell where your mama and daddy is at."

On 5 October 1997, the victim called police officers to her residence, stating that defendant had pushed her and held her down. Defendant was subsequently arrested and charged with assault on a female. The bail bondsman whom the victim called to post bond for defendant feared for the victim's safety and, therefore, refused to post defendant's bond. Defendant was awaiting trial on this charge at the time of the murder.

On the evening of 9 January 1998, Elma Yates Vanhoy, the victim's sister, called the victim several times but received no answer. Worried about her sister, Ms. Vanhoy phoned the police department and asked that an officer check on the victim. Officer Goble was dispatched to the residence and received no response after

knocking. The officer then left the residence at 11:00 p.m. and informed the victim's sister that all the lights were off and that the house was locked.

In light of the officer's information, Ms. Vanhoy woke her son-in-law, Frank Turnmire, at 11:30 p.m. and asked him to go check on the victim. The police were dispatched to help Mr. Turnmire gain access to the house by forced entry. When they entered the residence, they found defendant lying on the floor in his bedroom, intoxicated to the point of being nearly passed out. The hallway and the walls were blood splattered, and a path of blood was leading from the hallway to the bathroom where officers found the victim's body lying on the bathroom floor.

The victim's shirt had been pulled up to her neck; she had numerous wounds on her stomach and a slit across her neck. The body appeared to have been in that position several hours. Beneath the victim's body officers found a curved knife blade with no handle.

Officers found a small bloodstained steak-knife handle in a trash can in defendant's bedroom. They also discovered blue jeans that appeared to be bloodstained in the sink in defendant's bathroom and a shirt in defendant's bedroom that looked as though it had bloodstains on it.

Experts from the State Bureau of Investigation (SBI) lab compared the tread on defendant's tennis shoes with the imprints on the linoleum flooring from the victim's home and concluded that defendant's tennis shoes made the bloody impressions found on the linoleum flooring. The SBI serologist concluded that the blood on defendant's tennis shoes matched the DNA of the victim and did not match the DNA of defendant. Through DNA testing an officer found both defendant's and the victim's blood on defendant's wrist watch.

An expert from the SBI lab concluded that the knife handle found in the trash can in defendant's bedroom had at one time been joined to the knife blade found under the body of the victim. The pathologist who performed the autopsy on the victim opined that trauma to the head and chest and the knife injuries to the neck caused the victim's death. The pathologist also noted defensive wounds on the victim's hands and arms. Additional facts will be presented as necessary to discuss specific issues.

## GUILT-INNOCENCE PHASE

[1] Defendant contends that the trial court erred by denying his request to instruct the jury on voluntary intoxication. Defendant argues that the evidence of his intoxication at the time of the murder was sufficient to show that he lacked the necessary specific intent for first-degree murder. We disagree.

To satisfy his burden in establishing voluntary intoxication as a defense to negate premeditation and deliberation, defendant must show substantial evidence that his " 'mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill.' " *State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987) (quoting *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978)). More importantly, the evidence must show that " '*at the time of the killing*,' " defendant was so intoxicated that he could not form specific intent. *Id.* (quoting *Medley*, 295 N.C. at 79, 243 S.E.2d at 377). "Evidence tending to show only that defendant drank some unknown quantity of alcohol over an indefinite period of time before the murder does not satisfy the defendant's burden of production." *State v. Geddie*, 345 N.C. 73, 95, 478 S.E.2d 146, 157 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997); *see also State v. Laws*, 325 N.C. 81, 98, 381 S.E.2d 609, 619 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990).

Although defendant was substantially impaired when officers found him shortly after midnight, defendant presented no evidence of his condition before or at the time of the murder. Further, the victim's body was found cold, indicating the victim had been dead for several hours. The exact time of the victim's death is unknown; however, the victim's sister began calling the victim's residence at around 9:00 p.m. and never received an answer. Given the time differential between the time officers discovered defendant and noted his intoxicated state and the probable time of the murder, defendant had a sufficient amount of time to become intoxicated after committing the murder. Further, no evidence suggests the degree of defendant's intoxication, if any, at the time of the murder.

Additionally, evidence showed that defendant removed his tennis shoes, placed them under a cabinet, and put on his bedroom shoes. He placed a pair of blue jeans in the sink in his bathroom and removed his shirt. He threw a knife handle that matched the blade found under the victim's body in a trash can in his bedroom. These

actions, designed to hide defendant's participation or to clean up from the murder, demonstrate that defendant could plan and think rationally and was, thus, not so intoxicated at the time of the murder as to negate defendant's ability to form specific intent.

Based on the foregoing, we conclude defendant has failed to satisfy the high threshold "utterly incapable" standard required for an instruction on voluntary intoxication as a defense to premeditated and deliberate murder. While a defendant may rely on the State's evidence if it is sufficient to establish the defense, in this case the State's evidence did not satisfy defendant's burden of production. The State's evidence merely showed that sometime after the murder occurred, defendant was substantially impaired. Moreover, defendant's toxicology expert, Dr. Andrew Mason, testified as to his opinion of defendant's intoxication at 10:00 p.m., based on assumed facts, not in evidence, furnished to him by defendant's counsel. This evidence did not constitute substantial evidence of defendant's intoxication at the time of the murder. Without this temporal component defendant's defense of voluntary intoxication must fail. We do note, however, that the trial court submitted the lesser-included offense of second-degree murder. Having heard defendant's expert testimony, if the jurors had a reasonable doubt as to whether defendant's intoxication precluded him from forming the specific intent necessary for premeditated and deliberate murder, the jurors had the option of convicting defendant of the lesser offense.

We hold that the record evidence regarding defendant's intoxication at the time of the murder was insufficient to warrant instruction on the defense of voluntary intoxication. Accordingly, the trial court did not err in declining defendant's request for such instruction.

[2] Next, defendant contends that the record suggests a claim of ineffective assistance of counsel (IAC) in trial counsels' preparation and preservation of the intoxication issue. More specifically, defendant raises concerns that the Fourth Circuit Court of Appeals in *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000), *cert. denied*, 531 U.S. 1089, 148 L. Ed. 2d 694 (2001), interprets North Carolina law to require him to raise any IAC claim on direct appeal.

This Court has recently addressed the timing of an IAC claim pursuant to N.C.G.S. § 15A-1419(a)(3), taking into consideration the *McCarver* decision. *State v. Fair*, 354 N.C. 131, 166, —— S.E.2d ——, ——, (2001). The Court held in *State v. Fair* that a defendant's "IAC claims brought on direct review will be decided on the merits when

the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *Id.* The Court further noted that "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 167, —— S.E.2d at ——, slip op. at 48. Thus, while in some situations a defendant may be required to raise an IAC claim on direct appeal, a defendant will not be required to do so in all situations. In fact, given the nature of IAC claims, "defendants likely will not be in a position to adequately develop many IAC claims on direct appeal." *Id.*

The record discloses that in this case evidentiary issues may need to be developed before defendant will be in position to adequately raise his possible IAC claim. For this reason we direct that defendant not be precluded from raising this issue in a postconviction motion for appropriate relief.

## SENTENCING PROCEEDING

[3] Defendant next contends that the trial court erroneously submitted the (e)(8) aggravating circumstance that the victim was "engaged in the performance of h[er] official duties" as a witness at the time of the murder in that this circumstance was not supported by the evidence. N.C.G.S. § 15A-2000(e)(8) (1999). We agree.

The victim made a complaint to law enforcement officers on 5 October 1997 that defendant had "pushed her around the room and pushed her down on the bed and held her shoulders to the bed." Based on this complaint, officers immediately charged defendant with assault and named the victim as a witness. The victim-witness was killed on 9 January 1998, five days before defendant's trial was scheduled to begin. Based upon this evidence, the trial court instructed the jury on the (e)(8) aggravating circumstance.

The aggravating circumstance contained in N.C.G.S. § 15A-2000(e)(8) states in pertinent part:

The capital felony was committed against a . . . witness or former witness against the defendant, while engaged in the performance of his official duties or because of the exercise of his official duty.

N.C.G.S. § 15A-2000(e)(8). This aggravating circumstance contains two possible bases for the circumstance to be submitted: that the

murder was committed against a witness (i) while engaged in the performance of his official duties, or (ii) because of the exercise of his official duty. Thus, one prong is concerned with the victim's conduct at the time of the murder ("engaged in"), while the other prong is concerned with the defendant's motive ("because of").

The jury was instructed as follows:

First, was this murder committed against a witness against the defendant while engaged in the performance of her official duties. A murder is so committed, ladies and gentlemen, if at the time the defendant kills the victim, the victim is a witness against the defendant and is at that time engaged in their performance of an official duty. An official duty is anything which is necessary for a witness to do in his capacity as a witness against the defendant. Making a complaint which leads to the issuance of charges and waiting to testify in that case pursuant to subpoena constitutes the performance of an official duty of a witness. If you find from the evidence beyond a reasonable doubt that when the defendant killed the victim, the victim was a witness against the defendant and at that time was engaged in an official duty, you would find this aggravating circumstance . . . .

Under this instruction the jury was permitted to consider whether the victim was killed "while" she was "engaged in" her official duties as a witness. The trial court did not instruct the jury on the second, "because of" alternative. In giving this instruction, the trial court relied upon this Court's holding in *State v. Gray*, 347 N.C. 143, 491 S.E.2d 538 (1997), *cert. denied*, 523 U.S. 1031, 140 L. Ed. 2d 486 (1998), and the pattern jury instruction. Notes to the pattern jury instruction on N.C.G.S. § 15A-2000(e)(8) advise that one instruction is to be used "when the victim was killed while actually performing the official duty," N.C.P.I.—Crim. 150.10 n.26 (19__), while another instruction is to be used "when the killing did not occur *while* the victim was exercising his official duty, but *after* he did so and because of his having done so," *id.* at n.29.

The State argues, and the trial court agreed, that based upon *State v. Gray* a witness is engaged in the official performance of her duties from the time she swears out a warrant until the time she testifies. In *Gray* this Court stated in addressing the "engaged in" prong of the (e)(8) aggravating circumstance that "procuring a warrant and waiting to testify constitute the performance of an official duty of a witness." *Gray*, 347 N.C. at 183, 491 S.E.2d at 556. This statement is,

however, mere *obiter dicta* as to the "engaged in" prong as the submission in *Gray* dealt only with the "because of" prong. *Id.* In *Gray* the aggravating circumstance submitted was as follows:

> "Was this murder committed against Roslyn Gray because of the exercise of her official duty as a witness, that is, swearing out under oath before a magistrate four criminal warrants against the Defendant in her role as a witness in trials scheduled December 8, 1992?"

*Id.* at 180-81, 491 S.E.2d at 554. Moreover, *Gray* relied upon *State v. Green*, 321 N.C. 594, 365 S.E.2d 587, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988), as authority for this proposition. However, nothing in the Court's opinion in *Green* supports or suggests that "waiting to testify constitute[s] performance of an official duty."

We hold that the fact the victim was waiting to testify against defendant may be considered in making the factual determination of whether the victim was a witness against defendant for purposes of either prong of (e)(8). However, this factual determination is only the first step for either prong. To submit the "because of" prong, the State must also show that defendant's motivation in killing the victim was that she was a witness. To submit the "engaged in" prong, the State must also show that the victim was actively engaged at the time of the murder in the performance of a duty expected of a witness, such as swearing out a warrant, discussing the case with a prosecutor, going to court to testify, or actively testifying. *See State v. Gaines*, 332 N.C. 461, 470, 421 S.E.2d 569, 573 (1992) (interpreting N.C.G.S. § 15A-2000(e)(8) to require with respect to a law enforcement officer that the State prove, first, that the victim was a law enforcement officer and, second, "one or the other of a disjunctive, two-pronged test: (1) that the officer was murdered 'while engaged in the performance of his official duties' or (2) 'because of the exercise of his official duty' "), *cert. denied*, 507 U.S. 1038, 123 L. Ed. 2d 486 (1993). To the extent that language in *Gray* implies that a witness is engaged in her official duties from the time she swears out a warrant until she completes her testimony, that language is hereby disavowed.

In the instant case the evidence showed that the victim was merely waiting to testify but was not actively participating in any of her duties as a witness. At most the evidence showed that the victim was to be a witness against defendant. Thus, while the evidence established that the victim was to be a witness against defendant, no evidence established that the victim was engaged in her duties as a

witness at the time. Therefore, on this record we hold that the trial court erred in submitting the "engaged in" prong of the (e)(8) aggravating circumstance.

Further, on this record we cannot conclude as a matter of law that the "weighing process used by the jury would not have been different had the impermissible aggravating circumstance not been present." *State v. Taylor,* 304 N.C. 249, 285, 286 S.E.2d 761, 784 (1981), *cert. denied,* 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). Thus, this error cannot be harmless.

Finally, for clarification we note that, notwithstanding the comment in the notes to the pattern jury instructions, nothing in this opinion is intended to suggest that the fact a victim witness has not yet testified precludes submission of the "because of" prong of the (e)(8) aggravator.

Inasmuch as we remand this case for a new capital sentencing proceeding based on the erroneous submission of the (e)(8) aggravating circumstance, we decline to address defendant's other issues pertaining to the sentencing proceeding.

## PRESERVATION ISSUES

Defendant raises four issues pertinent to guilt-innocence that he concedes have been decided contrary to his position previously by this Court, namely, (i) that the short-form indictment was insufficient to charge defendant with first-degree murder and should be held unconstitutional; (ii) that the trial court's denial of defendant's motion to prohibit death qualification of the jury was constitutional error; (iii) that admission, pursuant to Rule 404(b) of the North Carolina Rules of Evidence, of evidence concerning defendant's prior conflicts with the victim was constitutional error; and (iv) that admission, pursuant to Rules 803(3) and 804(b)(5) of the North Carolina Rules of Evidence, of the victim's unsworn, hearsay statements concerning defendant was constitutional error.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings and also for the purpose of preserving these issues for any possible further judicial review. After considering defendant's arguments on these issues, we find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

NO ERROR IN GUILT-INNOCENCE PHASE; DEATH SENTENCE VACATED; REMANDED FOR NEW CAPITAL SENTENCING PROCEEDING.