STATE OF NORTH CAROLINA v. ALLEN SPENCER

No. COA01-1607

(Filed 17 December 2002)

**1. Assault— deadly weapon with intent to kill inflicting serious injury—jury instruction—voluntary intoxication**

The trial court did not commit plain error in an assault with a deadly weapon with intent to kill inflicting serious injury case by failing to instruct the jury on voluntary intoxication, because: (1) assuming arguendo that the evidence was sufficient to show that defendant was intoxicated, defendant has not met his burden of presenting substantial evidence of being unable to reason; and (2) although impulsiveness and acting without thinking first are unwise behaviors, these actions do not equate to defendant being so intoxicated that he was utterly incapable of forming a specific intent.

**2. Sentencing— aggravating factor—offense committed while on pretrial release**

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury case by finding as an aggravating factor that the offense was committed while defendant was on pretrial release for a charge of assault on a female, because: (1) rather than merely relying on the prosecutor's assertion, the trial court verified defendant's status by checking the clerk's records; and (2) based on these facts, the State proved by a preponderance of the evidence that an aggravating factor existed.

**3. Assault— deadly weapon with intent to kill inflicting serious injury—indictment—intent to kill element**

Although defendant contends the trial court erred in an assault with a deadly weapon with intent to kill inflicting serious injury case by failing to dismiss the indictment based on a failure to allege the element of the offense of specific intent to kill the victim, the indictment sufficiently alleged an intent to kill the victim.

Appeal by defendant from judgment entered 19 July 2001 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 9 October 2002.

*Roy Cooper, Attorney General, by Amy C. Kuntsling, Assistant Attorney General, for the State.*

*David G. Belser for defendant-appellant.*

THOMAS, Judge.

Defendant, Allen Spencer, was convicted of assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI) was sentenced to 116 to 149 months in prison.

He appeals, assigning as error the trial court's: (1) failure to instruct the jury on voluntary intoxication; (2) finding as an aggravating factor that the offense was committed while defendant was on pretrial release; and (3) failure to dismiss the indictment for AWDWIKISI where it did not allege an element of the offense. For the reasons discussed herein, we hold the trial court did not err.

The State's evidence tends to show the following: Sharon Roberts had lived with defendant for the last eight of the thirteen years she had known him. Her ten-year-old daughter referred to defendant as "Daddy" although he is not her biological father. During the year 2000, however, Roberts talked with defendant numerous times about ending their relationship. During these discussions, defendant said they would "be together forever," and he would kill her if she were to leave. In July 2000, defendant bit the area around Roberts's eye and choked her.

Sometime around November 2000, Roberts asked defendant to leave her home. He did so for several weeks, going to Fairfield, North Carolina. A few days after defendant's return to Greensboro, North Carolina, he went to Roberts's home and said he wanted to speak with her in her bedroom. When Roberts complied, defendant locked the door. He asked her "to make love to him for the last time." Roberts refused. Defendant then put a knife to her throat and said he was going to kill her. Roberts pleaded with him to spare her. Defendant then put the knife to his own throat and said that he was going to kill himself. Roberts eventually persuaded defendant to accompany her to the local mental health center for treatment.

Defendant was hospitalized for several days. Upon his release, Roberts agreed to help him find a place to live, and arranged for him to stay with her sister, Alice "Annette" Roberts (Annette).

On the night of 11 January 2001, Roberts was at Annette's home "drinking and getting high." While there, she had consensual sex with

STATE v. SPENCER

[154 N.C. App. 666 (2002)]

defendant. The next day, 12 January 2001, Roberts saw defendant several times at Annette's. During the evening, Roberts and Annette went out for a couple of hours to visit some friends, returning around nine or ten o'clock with about twenty dollars worth of crack cocaine. They smoked some, with defendant smoking the majority of it. He also consumed three or four beers. Sometime earlier that day, Roberts joked in front of defendant about possibly being pregnant.

Upon receiving a phone call from a male friend, Roberts decided to leave Annette's home with her daughter. Defendant appeared agitated and insisted on walking Roberts to her car. Once there, defendant asked whether Roberts was seeing another man. She reminded defendant that her daughter was in the car, said they could talk later, and attempted to drive away. Defendant, however, was sitting on the door frame and said, "If I had a gun, I'd kill you." Defendant then struck her. Roberts later testified that she initially thought defendant hit her on the neck, but upon seeing blood, realized he had stabbed her. Defendant stabbed Roberts in the face, neck, and chest. As she tried to block the knife, her hand was also cut.

Annette ran to the car and jumped on defendant, who she heard say, "I'm going to kill you." Jack Jordan, Annette's boyfriend, pulled Roberts from inside the car. Defendant then said to Roberts, "I guess it's over now. That's what you get for not telling me who you're [sleeping] with."

Later that night, Deputy James Cuddeback of the Guilford County Sheriff's Department interrogated defendant. After waiving his *Miranda* rights, defendant admitted he stabbed Roberts. Defendant appeared shaken and intermittently cried.

Defendant's evidence tends to show the following: Dr. Gary Hoover, a forensic psychologist, tested and evaluated defendant. The Minnesota Multiphasic Personality Inventory test indicated defendant was mildly depressed and somewhat irritable. The Milan Clinical Multiaxial Inventory showed defendant had "rather severe anxiety problems that were set in the context of a dependent personality." Hoover, meanwhile, said he believes defendant is extremely dependent, and "tends to become anxious and fragmented in his thinking when placed in stressful, anxiety-producing situations." According to Hoover, when defendant finally understood his relationship with Roberts had ended, "he lost control, he blew up." In Hoover's opinion, the stabbing was an impulsive act, or "an act without thinking," rather than a thoughtful one.

The jury returned a guilty verdict. The trial court found as an aggravating factor that defendant committed the offense while on pretrial release for a charge of assault on a female. It found as a mitigating factor that defendant acknowledged wrongdoing at an early stage of the proceedings. After the aggravating factor was found to outweigh the mitigating factor, defendant was sentenced to 116 to 149 months in prison.

[1] By his first assignment of error, defendant contends the trial court committed plain error in failing to instruct the jury on voluntary intoxication as a defense to AWDWIKISI. We disagree.

As defendant raises this argument for the first time on appeal, he correctly assigns plain error as the standard of review. *See* N.C. R. App. P. 10(c)(4). Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done'. . . or it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (emphasis in original) (quoting *U.S. v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

"Voluntary intoxication is not a legal excuse for a criminal act; however, it may be sufficient in degree to prevent and therefore disprove the existence of a specific intent such as an intent to kill." *State v. Gerald*, 304 N.C. 511, 521, 284 S.E.2d 312, 318 (1981). To require an instruction on voluntary intoxication, there must be evidence that "defendant's mind and reason were so completely intoxicated and overthrown that he could not form a specific intent to kill." *Id.* at 511, 284 S.E.2d at 318-19. In resolving the question of whether defendant is entitled to an instruction on voluntary intoxication, we examine the evidence in the light most favorable to defendant. *State v. Boyd*, 343 N.C. 699, 713, 473 S.E.2d 327, 334 (1996), *cert. denied*, 519 U.S. 1096, 136 L. Ed. 2d 722 (1997).

The evidence here shows defendant consumed crack cocaine and beer on 12 January 2001. It is unclear precisely how much he consumed. Roberts and Annette both testified he smoked the majority of the crack they shared. Roberts, however, said they "didn't have very much" crack; Annette estimated it was about twenty dollars worth. In addition, according to Roberts, defendant drank several beers, two earlier that day, and three or four that evening.

Further, shortly after the assault, defendant told police about the events leading to it. He recalled the phone call from Roberts's male

friend, the conversation she and defendant had at the car, Roberts's refusal to discuss their relationship at that moment, Roberts's threat to call the police, and his stabbing her in the neck.

Viewed in the light most favorable to defendant, this evidence does not establish that defendant was intoxicated to the degree of being incapable of forming an intent to kill. While it may be sufficient to show he was intoxicated, defendant has not met his burden of presenting substantial evidence of being "unable to reason." *See Gerald,* 304 N.C. at 521-22, 284 S.E.2d at 319 (holding no voluntary instruction required as defense to AWDWIKISI where defendant drank rum and wine prior to the shooting but was coherent and able to understand others).

We likewise reject defendant's contention that Hoover's opinion mandates an instruction on voluntary intoxication. Hoover's description of defendant's conduct as "impulsive" and "without thinking" does not equate to defendant being so intoxicated that he was "utterly incapable" of forming a specific intent. Impulsiveness and acting without first thinking are unwise behaviors; however, the degree is far different when heavy consumption of drugs or alcohol, "intoxicate[] and overthrow[]" a defendant's "mind and reason so that he could not form a specific intent to kill." *Gerald,* 304 N.C. at 511, 284 S.E.2d at 318-19. *See also State v. Brown,* 335 N.C. 477, 492, 439 S.E.2d 589, 598 (1994) (instruction not required where expert testified defendant was "acutely intoxicated" at time of crime); *Boyd,* 343 N.C. at 712-13, 473 S.E.2d at 333-34 (instruction not mandated where expert testified defendant was intoxicated at time of crime).

In *State v. Cheek,* 351 N.C. 48, 74-76, 520 S.E.2d 545, 560-61 (1999), *cert. denied,* 530 U.S. 1245, 147 L. Ed. 2d 965 (2000), the defendant had taken "two hits of acid" prior to the murder but was able to recall events both before and after the murder. Based on those facts, the Court held the defendant had not produced sufficient evidence from which a jury could conclude he was so intoxicated that he was "utterly incapable" of forming the specific intent to commit first-degree murder. *Id.* at 75-76, 520 S.E.2d at 561; *see also State v. Herring,* 338 N.C. 271, 274-76, 449 S.E.2d 183, 185-86 (1994) (no instruction required where defendant consumed forty to sixty ounces of fortified wine, four twelve-ounce malt liquor beers, and smoked three marijuana joints and testified he was in a state of intoxication at the time of the shooting but was able to recall the event).

Accordingly, we hold there was no error. This argument, based on plain error, is without merit.

**[2]** By his second assignment of error, defendant contends there was insufficient evidence for the trial court to find as an aggravating factor that the offense was committed while defendant was on pretrial release. Specifically, defendant contends the trial court erred because it solely relied on the prosecutor's assertion that the factor existed. We disagree.

Section 15A-1340.16(a) of the North Carolina General Statutes provides:

> (a) Generally, Burden of Proof.—The court shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court. The State bears the burden of proving by a preponderance of the evidence that an aggravating factor exists, and the offender bears the burden of proving by a preponderance of the evidence that a mitigating factor exists.

N.C. Gen. Stat. § 15A-1340.16(a) (2001). The statute sets forth no instructions regarding the types of proof permissible for establishing an aggravating factor. It simply requires the State to prove it exists "by a preponderance of the evidence." *Id.*

Defendant correctly notes, however, that "a trial court may not find an aggravating factor where the only evidence to support it is the prosecutor's mere assertion that the factor exists." *State v. Swimm*, 316 N.C. 24, 32, 340 S.E.2d 65, 70-71 (1986). Here, however, after the prosecutor asserted he believed defendant was on pretrial release, the trial court instructed the Clerk of Court to "check on any criminal warrants on [defendant], when they were served." The Clerk verified that defendant was served for assault on a female on "9/22." The Clerk's statement was also consistent with Hoover's testimony of defendant having "a pending charge that was lodged in September of 2000." Rather than merely rely on the prosecutor's assertion, the trial court verified defendant's status by checking the Clerk's records. Based on these facts, we hold the State proved by a preponderance of the evidence that an aggravating factor exists. Defendant's assignment of error is overruled.

**[3]** By his third assignment of error, defendant contends the indictment against him failed to allege all of the elements of AWDWIKISI.

Specifically, he argues it did not allege the element of specific intent to kill Roberts. We conclude otherwise. The indictment reads: "[D]efendant . . . did assault Sharon Renee Roberts . . . *with the intent to kill* and inflicting serious injury . . ." (Emphasis added.) This sufficiently alleges an intent to kill Roberts. The indictment "charges all essential elements of [the] alleged criminal offense to inform [defendant] of the accusation against him and enable[] him to be tried accordingly." *State v. Surcey*, 139 N.C. App. 432, 434, 533 S.E.2d 479, 481 (2000). Defendant's final assignment of error is therefore overruled.

NO ERROR.

Judges WALKER and BIGGS concur.