STATE OF NORTH CAROLINA v. DAVID MICHAEL TORRES

No. COA04-1130

(Filed 5 July 2005)

**1. Homicide— felony murder—killing of accomplice**

An instruction on felony murder was proper where defendant shot and killed a person who approached him from out of the headlights during a roadside robbery, and that person turned out to be an accomplice. Felony murder does not distinguish between victims who are innocent and those who are co-felons.

**2. Criminal Law— voluntary intoxication—intent to commit crime throughout**

There was no plain error in the failure to instruct on voluntary intoxication sua sponte in an armed robbery prosecution. Although there was general evidence that defendant was drinking and taking drugs on the evening of the crime, there was also evidence that defendant and his accomplice had the specific intent to commit the crime throughout the evening, including defendant's statement that he and his accomplice drove around looking for targets and rejected several, and that they pulled off the road at a fishmonger's truck solely to rob him.

**3. Appeal and Error— preservation of issues—argument not supported by authority**

An argument concerning transferred intent in a robbery and murder prosecution was deemed abandoned for lack of supporting authority.

Appeal by defendant from judgment entered 19 March 2004 by Judge W. Osmond Smith, III, in Wake County Superior Court. Heard in the Court of Appeals 20 April 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Buren R. Shields, III, for the State.*

*Megerian & Wells, by Franklin E. Wells, Jr., for defendant-appellant.*

ELMORE, Judge.

David Torres (defendant) was convicted of first-degree murder, assault with a deadly weapon inflicting serious injury, and robbery with a dangerous weapon. He appeals those convictions arguing that

it was error for the trial court to 1) instruct the jury on both "premeditation and deliberation" and felony murder; 2) fail to instruct on voluntary intoxication; and 3) instruct the jury on transferred intent.

During the late hours of 30 May and into the early morning hours of 31 May 2003 defendant and two friends, Josh Paz (Paz) and Tomeka Campbell (Campbell), were evaluating potential places to rob. These plans were occurring as the group was using drugs and alcohol. The three drove into several area gas stations intent on robbing the stores, but abandoned their plans for various reasons. Then, at around 5:00 a.m. on 31 May, the group found Anthony Luft (Luft), a merchant selling seafood out of the back of his truck. They pulled their car directly in front of the parked truck, so the two vehicles were facing each other.

Defendant and Paz got out of the car and approached Luft, who was packing up. Both defendant and Paz were wearing bandanas over their faces and carrying guns. Defendant got to Luft first, who was behind his trailer, and asked him for his money. Then Paz demanded the money. Luft told the two men his wallet did not have any money in it. Defendant ordered Luft to lie face down on the ground, and as he did, Luft's dog began barking from the truck. After yelling at the dog, defendant shot it twice and killed it. He then shot Luft twice, once in the back and once in the left shoulder, severely wounding him.

Defendant ran back toward the car yelling for Paz to join him. When he reached the car, he turned around and was looking into the headlights of the truck. From that angle defendant saw a person approaching him from beside the truck, but the lights obscured any ability to tell who was approaching. Defendant raised his gun and fired at the figure. The person fell immediately. When he ran over to examine his victim, defendant realized he had shot and fatally wounded Paz who was returning with a cash drawer from inside Luft's truck. According to Campbell's trial testimony, defendant later told her that he shot Paz again at close range, once he realized it was him, so he would not suffer. The medical examiner's report, introduced at trial, supports Paz being shot twice at close range, the second shot being fatal. Defendant's statement, introduced at trial, however, does not indicate he shot Paz a second time and denies he ever shot with the intent to kill.

The trial court instructed the jury on first-degree murder, including instructions on both felony murder and premeditation. The verdict sheets reflect that the jury found defendant guilty of the charge

under both theories. They found defendant not guilty of the attempted murder of Luft, but did find him guilty of 1) assault with a deadly weapon inflicting serious injury and 2) robbery with a firearm. From the judgments entered consistent with these verdicts, defendant appeals.

[1] Defendant first argues that it was error for the trial court to instruct the jury on felony murder because it was his co-felon who was killed in the robbery. Defendant cites to *State v. Bonner*, 330 N.C. 536, 411 S.E.2d 598 (1992), for the proposition that the felony murder rule was not designed to protect the life of the aggressors. Yet, this is an inaccurate read of our Supreme Court's opinion. In *Bonner*, the Court was faced with determining whether to extend the felony murder rule to cover the death of an accomplice *at the hands of the victim*. The Court held that it was bringing North Carolina in line with the general rule that "for a defendant to be held guilty of murder [by felony murder], it is necessary that the act of killing be that of the defendant, and for the act to be his, it is necessary that it be committed by him or by someone acting in concert with him." *Bonner*, 330 N.C. at 542-43, 411 S.E.2d at 601 (internal quotation omitted) (citing cases). Since the defendant's accomplice in *Bonner* was killed by the victim, the Court determined it was prejudicial error to instruct the jury on felony murder. The Court in *Bonner* assessed criminal responsibility through felony murder by analyzing who or what action killed the victim, not the status of the victim as innocent, the intended victim, or even an accomplice. Here, the death of Paz during the perpetration of a felony was the direct result of *defendant's hand*, not that of an adversary to the felonious actions of the group. *Bonner* is simply inapplicable here, and in fact, supports the felony murder instruction.

Despite having no case on point in North Carolina, we believe the circumstances of Paz's death fall well within the established boundaries of felony murder. *See State v. Richardson*, 341 N.C. 658, 666-67, 462 S.E.2d 492, 498 (1995) ("The felony murder rule was promulgated to deter even accidental killings from occurring during the commission of or attempted commission of a dangerous felony."); *People v. Graham*, 477 N.E.2d 1342, 1347 (Ill. App. Ct. 1985) ("[Felony murder] addresses the killing of 'an individual' during a forcible felony; the language does not distinguish between victims who are innocent and victims who are co-felons. In keeping with its purpose, we find the guilt or innocence of the deceased irrelevant to the felony-murder doctrine."); *People v. Warren*, 205 N.W.2d 599, 600 (Mich. Ct. App.

1973) (where killing was done by defendant, felony-murder rule was applicable although victim was a co-felon). Defendant shot at an unknown figure approaching him from out of the headlights during a robbery. The fact that this person was defendant's accomplice does not change the fact that his death occurred by defendant's hands during the perpetration of a felony.

[2] Next, defendant argues that the trial court erred in failing to instruct the jury on the defense of voluntary intoxication regarding the robbery charge. Defendant did not object to the absence of this instruction at trial, and now asks this Court to review it for plain error. We cannot agree with defendant that including the instruction would have resulted in a different verdict for the specific intent crime of robbery with a dangerous weapon. "Voluntary intoxication is not a legal excuse for a criminal act; however, it may be sufficient in degree to prevent and therefore disprove the existence of a specific intent such as an intent to kill." *State v. Spencer*, 154 N.C. App. 666, 669, 572 S.E.2d 815, 818 (2002) (internal quotations omitted). But before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence that, at the time of the crime for which he is being tried, defendant was intoxicated to the point that his mind and reason were overthrown, and that he was thus utterly incapable of forming the requisite intent to commit the crime. *See State v. Long*, 354 N.C. 534, 538, 557 S.E.2d 89, 92 (2001). "Evidence of mere intoxication is not enough to meet defendant's burden of production." *State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545, *disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002). Where the defendant fails to meet this high burden, the court is not required to charge the jury on voluntary intoxication. *See id.*

Here, defendant failed to meet that burden. Evidence did exist that, prior to 5:00 a.m. when he robbed Luft, defendant had been drinking and taking drugs intermittently between 8:00 p.m. and 1:00 a.m. However, this evidence was general at best. On the other hand, there was evidence that throughout the evening and early morning, including the time he was drinking and smoking, defendant had the specific intent to commit robbery. Defendant's statement to police stated that he and Paz began driving around early in the evening looking for "targets" to rob and pulled in several places before deciding to leave. The statement also noted that the sole reason for pulling off the road and up in front of Luft's truck was to rob him. Since he was packing up, defendant "thought he had some

money on him. . . . I had lost my job and needed money." Applying plain error review, we find defendant's evidence to fall short of requiring the judge, *sua sponte,* to instruct the jury on voluntary intoxication regarding the robbery charge. *See Spencer,* 154 N.C. App. at 670-71, 572 S.E.2d at 818-19.

[3] Finally, defendant argues that the trial court erred in instructing the jury on transferred intent. Although he states that "there was no reason for the court to give a transferred intent instruction, and giving it may have confused the jury about the nature of specific intent required for first degree murder[,]" defendant is unable to cite any authority to support the proposition. Accordingly, under N.C.R. App. P. 28(b)(6), we deem this issue abandoned.

No error.

Judges McGEE and CALABRIA concur.