An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1469

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Union County<br>Nos. 10 CRS 53476-77 |

TYRONE DEVON SLOAN

Appeal by defendant from judgment entered 3 July 2013 by Judge W. Erwin Spainhour in Union County Superior Court. Heard in the Court of Appeals 19 May 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Ryan F. Haigh,* for the State.

> *Tin Fulton Walker & Owen, PLLC, by Noell P. Tin,* for defendant-appellant.

STEELMAN, Judge.

Where defendant cannot demonstrate based upon the evidence at trial, that he would have been entitled to a jury instruction based upon voluntary intoxication, he cannot show the prejudice necessary to support his argument of ineffective assistance of counsel. The trial court did not err in denying defendant's

motion to dismiss the charges of first-degree kidnapping and felony conspiracy.

## I. Factual and Procedural Background

On 20 June 2010, Jonathan Fincher (Fincher) and Tyrone Sloan (Defendant) had an altercation after a night of drinking which resulted in Fincher striking Sloan on the head several times with a level. These cases arise out of an incident five days later, on 25 June 2010, at the residence of defendant's sister.

Defendant met with Steven Barbour (Barbour), Michael Ivey (Ivey), and Johan Sloan (Sloan). They discussed how to lure Fincher to the residence of defendant's sister. Barbour was to pick up Fincher and drive him there. Ivey and Sloan were responsible for making sure Fincher did not have a weapon. Defendant would then assault Fincher with a baseball bat. Barbour brought Fincher to the residence. Defendant struck Fincher with the baseball bat, bringing him to the ground. Sloan checked Fincher for weapons, and then ran away. Ivey held Fincher while defendant beat him with a baseball bat. Fincher was unable to escape because Ivey was blocking the gate leading from the yard and was holding him. When defendant inadvertently struck Ivey with the bat, Ivey left. Defendant continued to

pummel Fincher with the bat, and then attacked and cut him with a box cutter. Eventually, defendant also left.

Fincher suffered a broken collarbone, lost five units of blood, and required multiple stitches and staples about his head and back. He almost died in the hospital during surgery.

Defendant was indicted for attempted first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, felony conspiracy, and assault with a deadly weapon with the intent to kill, inflicting serious injury. The jury found defendant not guilty of robbery with a dangerous weapon, but guilty of attempted first-degree murder, first-degree kidnapping, felony conspiracy, and assault with a deadly weapon with intent to kill, inflicting serious injury. The trial court consolidated the four charges for judgment, and imposed an active sentence of 144-182 months.

Defendant appeals.

## II. Ineffective Assistance of Counsel

In his first argument, defendant contends that his trial counsel was ineffective in failing to request a jury instruction on diminished capacity based on voluntary intoxication. We disagree.

## A. Standard of Review

> To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), cert. denied, 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

## B. Analysis

Whether defense counsel was ineffective is analyzed under a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693 (1984). Defendant must first show that counsel's performance was deficient. *Id.* Second, the defendant must show that the deficient performance prejudiced his defense. *Id.* In order to establish prejudice, the defendant must show that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. 466 U.S. at 694, 80 L.Ed.2d at 698.

In order to have been entitled to a jury instruction on diminished capacity based upon voluntary intoxication there must be evidence that at the time of the crime, "the defendant's mind and reason were so completely intoxicated and overthrown" that he could not form the specific intent required of the relevant offense. *State v. Gerald*, 304 N.C. 511, 521, 284 S.E.2d 312, 318-19 (1981).

While the trial court must consider all evidence in the light most favorable to the defendant, "a person may be excited, intoxicated and emotionally upset, and still have the capability to formulate the necessary plan, design, or intention." *State v. Mash*, 323 N.C. 339, 347, 372 S.E.2d 532, 537 (1988) (quoting *State v. Hamby*, 276 N.C. 674, 678, 174 S.E.2d 385, 387 (1970)). Our appellate courts have held on numerous occasions that despite the ingestion of a large amount of alcohol or drugs by the defendant, a jury instruction on voluntary intoxication was not warranted. *See State v. Cheek*, 351 N.C. 48, 74-76, 520 S.E.2d 545, 560-61 (1999) (holding that defendant was not entitled to voluntary intoxication instruction when he had taken two hits of acid prior to the murder but was able to recall events both before and after the murder); *State v. Herring*, 338 N.C. 271, 274-76, 449 S.E.2d 183, 185-87 (1994) (holding that

defendant was not entitled to voluntary intoxication instruction when he consumed forty to sixty ounces of fortified wine, forty-eight ounces of malt liquor beers, and smoked three marijuana joints and testified he was intoxicated at the time of the shooting but was able to recall the event); *State v. Long*, 354 N.C. 534, 538-39, 557 S.E.2d 89, 92 (2001) (holding that defendant was not entitled to a voluntary intoxication instruction because actions taken after the murder to clean up and hide evidence demonstrate that the defendant could plan and think rationally).

The North Carolina Supreme Court has held that "[e]vidence tending to show only that defendant drank some unknown quantity of alcohol over an indefinite period of time before the murder does not satisfy the defendant's burden of production." *State v. Long*, 354 N.C. 534, 538, 557 S.E.2d 89, 92 (2001) (quoting *State v. Geddie*, 345 N.C. 73, 95, 478 S.E.2d 146, 157 (1996)). In the instant case, the only evidence presented at trial regarding defendant's intoxication on the night in question was his sister's testimony that she gave him some "red liquor" when he arrived at her house and that he drank "some beer" with his nephews prior to the assault. There was no evidence of the

number of beers defendant drank, the amount of red liquor defendant drank, or the alcohol content of the red liquor.

On 25 June 2010, defendant devised an elaborate plan to assault Fincher and assigned roles to Barbour, Ivey, and Sloan. The luring of Fincher to the residence of defendant's sister and the assault of Fincher was substantially carried out in accordance with the plan. Defendant was also able to recall detail of the events of 25 June 2010 when he testified at trial. These are not the actions of someone so intoxicated that they could not form the specific intent required of the relevant offenses.

We hold that the evidence at trial would not have supported a jury instruction on voluntary intoxication. Therefore, defendant cannot show prejudice arising from his counsel's failure to request such a jury instruction.

This argument is without merit.

### III. Motion to Dismiss Kidnapping Charge

In his second argument, defendant contends that the trial court erred in denying his motion to dismiss the charge of first-degree kidnapping. We disagree.

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citing *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

## B. Analysis

While constitutional protections against double jeopardy do not preclude convictions for both kidnapping and another felony committed after such restraint, the restraint constituting the kidnapping must be "a separate, complete act, independent of and apart from the other felony." *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978). "[T]he key question is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that

inherent in the underlying felony itself." *State v. Muhammad*, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001).

In the instant case, the indictment for first-degree kidnapping alleged that Fincher was unlawfully confined or restrained or removed from one place to another without his consent for the purpose of doing serious bodily injury to him. The trial court instructed the jury on first-degree kidnapping based upon restraint for "the purpose of doing serious bodily injury." The jury was further instructed that the restraint had to be "a separate, complete act independent of and apart from the injury." Finally to first-degree kidnapping, the jury was instructed as to the theory of acting in concert.

Defendant contends that any restraint was inherent in the assault of Fincher, and that the alleged restraint did not expose Fincher to any greater danger than was inherent in the felony assault.

The North Carolina Supreme Court has recognized that there are certain felonies that cannot be committed without some restraint of the victim, such as forcible rape and armed robbery. *Fulcher* at 523, 243 S.E.2d at 351. Assault with a deadly weapon with intent to kill, inflicting serious injury is not within that class of felonies because "[s]uch an assault may

be committed without ever necessitating the restraint or confining of the victim." *State v. Carrillo*, 115 N.C. App. 674, 677, 446 S.E.2d 379, 382 (1994) (holding that tying the victim up with an electrical cord was a separate restraint apart from the assault which occurred when the defendant plugged the cord into the wall outlet and severely burned the victim); *see also State v. Gayton-Barbosa*, 197 N.C. App. 129, 140, 676 S.E.2d 586, 593 (2009) (holding that a separate kidnapping charge was proper when the defendant kept the victim from leaving her house by repeatedly striking her with a bat then grabbed her when she attempted to escape because "detaining [the victim] in her home and then again outside was not necessary to effectuate the assaults"); *State v. Washington*, 157 N.C. App. 535, 538-39, 579 S.E.2d 463, 466 (2003) (holding that restraint was separate and distinct from assault when the defendant grabbed the victim, threw him to the ground, and the victim could not flee because defendant continued to hold him while assaulting him).

In the instant case, it was not an inherent or inevitable part of the assault that Ivey hold Fincher down or that the gate be blocked so Fincher could not escape. This degree of restraint goes beyond what is required for an assault with a deadly weapon

with intent to kill, inflicting serious injury and was separate and apart from the assault.

There was substantial evidence presented at trial to support a first-degree kidnapping conviction. The trial court did not err in denying defendant's motion to dismiss that charge.

This argument is without merit.

## IV. Motion to Dismiss Felony Conspiracy

In his third argument, defendant contends that the trial court erred in denying his motion to dismiss the charge of felony conspiracy. We disagree.

## A. Standard of Review

The appropriate standard of review for a motion to dismiss has been described in Section III A, above.

## B. Analysis

A conspiracy is "an agreement, express or implied, between two or more persons, to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Brewton*, 173 N.C. App. 323, 327, 618 S.E.2d 850, 854 (2005) (quoting *State v. Gell*, 351 N.C. 192, 209, 524 S.E.2d 332, 343 (2000)). The crime of conspiracy is completed when the agreement is made and no overt act is necessary to charge the defendant with conspiracy.

*State v. Davenport*, 227 N.C. 475, 494, 42 S.E.2d 686, 699 (1947). Furthermore, direct evidence of an express agreement is not necessary; conspiracy may be established by circumstantial evidence of a mutual, implied understanding. *State v. Lyons*, 102 N.C. App. 174, 183, 401 S.E.2d 776, 781 *aff'd*, 330 N.C. 298, 412 S.E.2d 308 (1991) (citing *State v. Collins*, 81 N.C. App. 346, 350, 344 S.E.2d 310, 313 (1986).

In order to charge defendant with conspiracy to commit kidnapping, the State had the burden of presenting substantial evidence that defendant entered into an agreement with Michael Ivey, Johan Sloan, and Steven Barbour to commit first-degree kidnapping. First-degree kidnapping occurs when any person unlawfully confines, restrains, or removes from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, if such confinement, restraint or removal is for the purpose of doing serious bodily harm to the person so confined or restrained. N.C. Gen. Stat. § 14-39 (2013).

Conspiracy is generally established by "a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to

the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712 169 S.E. 711, 712 (1933) (citing *State v. Wrenn*, 198 N.C. 260, 151 S.E. 261 (1930)). "In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citing *State v. Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 617 (1984)).

On the night of 25 June 2010, defendant, Barbour, Ivey, and Sloan met at the residence of defendant's sister. Defendant explained the altercation between himself and Fincher that occurred on 20 June 2010, and devised a plan to get revenge against Fincher. Defendant planned to lure Fincher to his sister's house and instructed Barbour to pick up Fincher and drive him there. Ivey and Sloan were responsible for patting Fincher down to insure that he did not have a weapon. Defendant told Sloan, Barbour, and Ivey that he would then attack Fincher with a baseball bat.

There was substantial evidence presented at trial that there was a plan made between defendant, Sloan, Barbour, and Ivey to unlawfully restrain Fincher for the purpose of doing to him serious bodily harm. We hold that the mutual, implied understanding between defendant, Sloan, Barbour, and Ivey was

that restraint would be required in order to pat Fincher down against his will and assault him with a baseball bat. Thus, the requirements for felony conspiracy based upon first-degree kidnapping were all met. The trial court did not err in denying defendant's motion to dismiss the charge of felony conspiracy.

This argument is without merit.

NO ERROR.

Chief Judge MARTIN and Judge DILLON concur.

Report per Rule 30(e).